IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 22-cv-01499-RGA |
| KATHY JENNINGS, Attorney General of the State of Delaware, | ) ) ) | |
| Defendant. | ) ) | |

**COMBINED OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
*Attorneys for Defendant*

Date: January 20, 2023

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ..................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

ARGUMENT ..............................................................................................................................4

I.      LEGAL STANDARDS .................................................................................................4

        A.      Motion to Dismiss.............................................................................................4

        B.      Preliminary Injunction .....................................................................................4

        C.      Facial Challenges .............................................................................................5

II.     THE COMPLAINT FAILS TO STATE A CLAIM ......................................................6

        A.      Count I (Preemption) ........................................................................................6

        B.      Count II (Commerce Clause) ............................................................................8

        C.      Count III (First Amendment) ..........................................................................11

        D.      Count IV (Second Amendment) ......................................................................13

        E.      Count V (Due Process) ...................................................................................14

III.    PLAINTIFF FAILS TO MEET ITS BURDEN TO OBTAIN PRELIMINARY
        INJUNCTIVE RELIEF................................................................................................15

        A.      Plaintiff is Unlikely to Succeed on the Merits ...............................................15

        B.      Plaintiff Has Not Established Irreparable Harm .............................................16

        C.      The Balance of the Harms Weighs Against Plaintiff.......................................19

CONCLUSION.........................................................................................................................20

## TABLE OF AUTHORITIES

*A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515 (3d Cir. 1976)............................................................17

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC,* 793 F.3d 313 (3d Cir. 2015)............5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................................4

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)...........................................................11

*Boutilier v. I.N.S.*, 387 U.S. 118 (1967).................................................................................14, 15

*Cent. Hudson Gas & Elec. Corp, v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)...............11

*Chestnut Hill Sound Inc. v. Apple Inc.*, 2015 WL 6870037 (D. Del. Nov. 6, 2015) ...................16

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022)..........................11

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008).........................................7

*Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249 (3d Cir. 2006) .....8, 9

*CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013) ...................................................14

*Conchatta, Inc. v. Evanko*, 83 F. App'x 437 (3d Cir. 2003).........................................................16

*Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300 (3d Cir. 2020) ..............20

*Dailey v. City of Philadelphia*, 417 F. Supp. 3d 597 (E.D. Pa. 2019) .............................................5

*DDRA Capital, Inc. v. KPMG, LLP*, 710 F. App'x 522 (3d Cir. 2017)............................................8

*Del. State Univ. Student Hous. Found. v. Amblin Mgmt. Co.*, 556 F. Supp. 2d 367 (D. Del. 2008) ..........................................................................................................................................4

*Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198 (D. Del. Oct. 9, 2019) ...............4, 5

*Dep't of Revenue v. Davis*, 553 U.S. 328 (2008).........................................................................11

*District of Columbia v. Heller*, 554 U.S. 570 (2008)...................................................................13

*Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) ..................4

*Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2017) ..........................................................13

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) ....................................17

*Fruchtman v. Town of Dewey Beach*, 60 F. Supp. 3d 556 (D. Del. 2014) ....................................14

*F.T.C. v. Std. Oil Co. of Cal.*, 449 U.S. 232 (1980)....................................18

*Gazzola v. Hochul*, 2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022)....................................13

*Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781 (4th Cir. 1991)..............20

*Heffner v. Murphy*, 745 F.3d 56 (3d Cir. 2014)....................................5

*Hill v. Colorado*, 530 U.S. 703 (2000) ....................................13

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) ....................................16

*In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232 (3d Cir. 2017) ....................................8

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989)....................................16, 18

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)....................................4

*Lanin v. Borough v. Tenafly*, 515 F. App'x 114 (3d Cir. 2013) ....................................16

*Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48 (3d Cir. 2014)....................................16

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)....................................4

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) ....................................16

*Maryland v. King*, 567 U.S. 1301 (2012) ....................................19-20

*Myslewski v. City of Rehoboth Beach*, 987 F. Supp. 2d 499 (D. Del. 2013) ....................................5

*Nat'l Shooting Sports Found., Inc. v. James*, 2022 WL 1659192 (N.D.N.Y. May 25, 2022).....7, 9

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ....................................19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ....................................13

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ....................................8, 9, 10

*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020)....................................20

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ....................................5, 19

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ...............................................18

*Sherwin-Williams Co. v. Cty. of Delaware*, 968 F.3d 264 (3d Cir. 2020) ....................................18

*Stilp v. Contino,* 613 F.3d 405 (3d Cir. 2010)...............................................................................17

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330
    (2007) ................................................................................................................................ 10-11

*United States v. Hsu*, 40 F. Supp. 2d 623 (E.D. Pa. 1999) ............................................................15

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ..............................................................5

*United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001) ...................................20

*United States v. Salerno*, 481 U.S. 739 (1987) ...............................................................................5

*United States v. Stevens*, 533 F.3d 218 (3d Cir. 2008) ..................................................................14

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914 (3d Cir. 1990)...................11

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)......................14

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)..................................5

## STATUTES AND OTHER AUTHORITIES

U.S. CONST. AMEND. I.................................................................................................... *passim*

U.S. CONST. AMEND. II ................................................................................................3, 13, 14

U.S. CONST. AMEND. XIV ....................................................................................................3, 14

U.S. CONST. ART. I § 8 ................................................................................................... *passim*

U.S. CONST. ART. VI ..................................................................................................... *passim*

15 U.S.C. §§ 7901-03 ...................................................................................................2, 6, 7

10 *Del. C.* § 3930 ........................................................................................................... *passim*

11 *Del. C.* § 1448A ..............................................................................................................2

11 *Del. C.* § 1448B ..............................................................................................................2

83 *Del. Laws* ch. 332 (2022) ......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

Restatement (Third) of Torts § 29, cmt. j) ...........................................................................8

Xerxes Wilson, *Teens plead guilty in shooting death of Keshall 'Keke' Anderson*, The Del.
    News J., Jan. 23, 2019, https://www.delawareonline.com/story/news/2019/01/23/
    teen-pleads-guilty-shooting-death-wilmington-teen-keshall-keke-anderson/
    2650146002/ ...........................................................................................................19

## NATURE AND STAGE OF THE PROCEEDINGS

In this action, Plaintiff National Shooting Sports Foundation ("Plaintiff" or "NSSF") challenges a statute enacted by Delaware's General Assembly and signed into law on June 30, 2022, taking effect immediately.  Plaintiff filed its Complaint, Motion for Preliminary Injunction, and Opening Brief[1] on November 16, 2022.  D.I. 1, 3, 4.  Defendant Kathy Jennings, the Attorney General of Delaware ("Defendant"), submits this brief in support of her Motion to Dismiss and in opposition to the Motion for Preliminary Injunction.

## SUMMARY OF ARGUMENT

1.      Plaintiff has failed to state a claim as to any of its claims.

2.      Plaintiff is not entitled to a preliminary injunction because it has not demonstrated a likelihood of success on the merits, irreparable harm, or the balance of harms weighs in its favor.

## STATEMENT OF FACTS

### A.      Delaware Enacts SB 302 in June 2022.

On June 30, 2022, the Governor of Delaware signed into law Senate Bill 302, a statute enacted by the Delaware General Assembly and titled the Keshall "Keke" Anderson Safe Firearm Sales Act ("SB 302").[2]  Exs. 1, 2.  The statute became effective immediately.  Ex. 2.  As set forth in SB 302's legislative findings, the General Assembly enacted the statute "to promote and protect the health, safety, and welfare of the people of Delaware."  SB 302 § 1(5).  The General Assembly sought to hold "bad actors in the firearm industry" accountable for "illegal conduct" that has resulted in "harm to the public and fuels the epidemic of gun violence in Delaware and across the nation."  SB 302 § 1(1).  The General Assembly noted the lack of a "robust public nuisance statute"

---

[1] Plaintiff's Opening Brief is cited herein as "POB __."
[2] 83 *Del. Laws* ch. 332 (2022).

for legal redress against firearms manufacturers and dealers who "may have knowingly or recklessly taken actions that have endangered the safety and health of Delaware residents," while at the same time "more deadly and destructive firearms" have been developed and some industry members "have implemented sales, distribution, and marketing practices that have contributed to the development of an illegal secondary market for these increasingly dangerous instruments."  SB 302 § 1(3).  The General Assembly further found that SB 302 did not conflict with the federal Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-03.  SB 302 § 1(4).

SB 302 amended the Delaware Code in two ways.  First, SB 302 repealed subsection (d) of Section 1448A of Title 11.  SB 302 § 2.  Section 1448A(d) had provided immunity from liability to firearms importers, manufacturers, or dealers so long as they had complied with the criminal background check requirements of Section 1448A(a) and (b) or, if applicable, Section 1448B.

Second, SB 302 amended Chapter 39 of Title 10 of the Delaware Code by creating a cause of action for public nuisance by a "firearm industry member," defined as a person "engaged in the sale, manufacturing, distribution, importing, or marketing of a firearm-related product."  SB 302 § 3, § 3928(a)(1).[3]  Section 3930 provides that "[a] firearm industry member, by conduct unlawful in itself or unreasonable under all circumstances, may not knowingly or recklessly create, maintain, or contribute to a public nuisance through the sale, manufacturing, importing, or marketing of a firearm-related product."  § 3930(b).  The statute also requires firearm industry members to "establish and implement reasonable controls regarding the manufacture, sale, distribution, use, and marketing of the firearm industry member's firearm-related products."  § 3930(c).  Under the statute, a violation of either Section 3930(b) or (c) is considered a public

---

[3] Although SB 302 refers to a Section 3928, the amendment is actually codified as 10 *Del. C.* § 3930, referred to herein as "Section 3930."

2

nuisance.  § 3930(d).  The statute further provides that "[a] firearm industry member's conduct constitutes a proximate cause of the public nuisance if the harm to the public is a reasonably foreseeable effect of the conduct, notwithstanding any intervening actions, including criminal actions by third parties."  § 3930(e).  The statute authorizes the Attorney General or a private party harmed by a firearm industry member's violation of Section 3930 to bring suit and seek relief in the form of monetary and/or injunctive relief.  § 3930(f), (g)(1).

Finally, SB 302 contains a severability clause under which if any provision of SB 302 is held invalid, its invalidity does not affect the other provisions or application of those provisions. SB 302 § 4.

### B.    NSSF Waits Five Months Before Bringing Suit.

Nearly half a year after SB 302 went into effect, NSSF filed this action.  D.I. 1.  NSSF is a national trade association with a "membership of more than 9,000 manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States."  Compl. ¶ 8.  The Complaint challenges SB 302 as preempted by PLCAA (Count I), in violation of the Commerce Clause (Count II), and in violation of the First Amendment, Second Amendment, and due process under the Fourteenth Amendment (Counts III, IV, and V).[4]  NSSF seeks preliminary and permanent injunctive relief barring the Attorney General from enforcing or otherwise bringing suit against NSSF and its members under SB 302.

---

[4] Although NSSF challenges SB 302 as a whole, its claims are directed to Section 3930.

3

## ARGUMENT

### I.   LEGAL STANDARDS.

#### A.   Motion to Dismiss.

Under Rule 12(b)(6), the Court must dismiss a complaint if it determines, after "accepting well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted). "To survive a motion to dismiss under Rule 12(b)(6), the factual allegations must be sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Del. State Univ. Student Hous. Found. v. Amblin Mgmt. Co.*, 556 F. Supp. 2d 367, 368 (D. Del. 2008).   A well-pleaded complaint must contain more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

#### B.   Preliminary Injunction.

A preliminary injunction is an extraordinary remedy that should be granted in limited circumstances only if the movant carries its burden of proving that the circumstances clearly demand it. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).   A motion for a preliminary injunction "may be granted only when the moving party shows (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018).   The movant carries a heavy burden and must establish entitlement to such injunctive relief by clear evidence. *Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198, at *2 (D. Del. Oct. 9, 2019). "Failure to establish any of the elements,

especially either of the first two, renders preliminary injunctive relief 'inappropriate.'" *Id.* (quoting

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC,* 793 F.3d 313, 319 (3d Cir. 2015)).

Further, if a movant cannot establish the first two elements, a court need not consider the remainder

of the elements.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

### C.   Facial Challenges.

Because Plaintiff does not allege that its members are currently facing any proceedings

under Section 3930, its claims amount to a pre-enforcement, facial challenge.  "A facial challenge

to a legislative Act is, of course, the most difficult challenge to mount successfully, since the

challenger must establish that no set of circumstances exists under which the Act would be valid."

*Myslewski v. City of Rehoboth Beach*, 987 F. Supp. 2d 499, 502 (D. Del. 2013) (quoting *United

States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir.

2014).  Accordingly:

> The Supreme Court "disfavors" facial challenges because such claims "often rest
> on speculation"; "run contrary to the fundamental principle of judicial restraint that
> courts should neither anticipate a question of constitutional law in advance of the
> necessity of deciding it nor formulate a rule of constitutional law broader than is
> required by the precise facts to which it is to be applied"; and "threaten to short
> circuit the democratic process by preventing laws embodying the will of the people
> from being implemented in a manner consistent with the Constitution."

*Dailey v. City of Philadelphia*, 417 F. Supp. 3d 597, 617 (E.D. Pa. 2019) (quoting *Wash. State

Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)).  As to facial challenges

on First Amendment grounds, the plaintiff may alternatively establish "that the law is 'overbroad

because a substantial number of its applications are unconstitutional, judged in relation to the law's

plainly legitimate sweep.'"  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (quoting

*Wash. State Grange*, 552 U.S. at 459 n.6).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM.

### A.   Count I (Preemption).

Plaintiff's primary claim is that Section 3930 is preempted by PLCAA and therefore violates the Supremacy Clause.  But Plaintiff's claim ignores the provisions of both PLCAA and Section 3930.  PLCAA bars any "qualified civil liability action," which is defined as a civil action or proceeding brought "against a manufacturer or seller of a qualified product," defined as a firearm, ammunition, or component thereof, for relief "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."  15 U.S.C. §§ 7902; 7903(4), (5)(A).  However, PLCAA specifically excludes from the prohibition certain actions, one of which is the "predicate exception":

> The term "qualified civil liability action" . . . shall not include-- an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . .

15 U.S.C. § 7903(5)(A)(iii).  Section 3930 fits squarely within the predicate exception.  First, it is a statute "applicable to the sale or marketing of the [firearm-related] product": Section 3930 requires firearm industry members to "establish and implement reasonable controls regarding the manufacture, sale, distribution, use, and marketing of" firearm-related products (§ 3930(c))[5] and prohibits firearm industry members from "knowingly or recklessly creat[ing], maintain[ing], or contribut[ing] to a public nuisance through the sale, manufacturing, importing, or marketing of a

---

[5] "Reasonable controls" are, in turn, defined under the statute as "reasonable procedures, safeguards, and business practices that are designed to," among other things, "[p]revent the sale or distribution of a firearm-related product to a straw purchaser, a firearm trafficker, a person prohibited from possessing a firearm under state or federal law, or a person who the firearm industry member has reasonable cause to believe is at substantial risk of using a firearm-related product to harm themselves or unlawfully harm another or of unlawfully possessing or using a firearm-related product."  § 3930(a)(6).

firearm-related product" through unlawful or unreasonable conduct (§ 3930(b)).  Plaintiff's reliance on a Second Circuit decision to contend that Section 3930 is not "applicable to" the sale or marketing of firearm-related products is misplaced.  Compl. ¶¶ 52-53; POB 5.  In that case, the Second Circuit found New York's general criminal nuisance statute did not fall within the predicate exception because the statute did not contemplate or expressly regulate firearms, such that it would be "applicable to" the sale or marketing of firearm-related products.  *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 400-04 (2d Cir. 2008).  In contrast, Section 3930 expressly regulates the sale and marketing of firearm-related products and imposes liability exclusively on firearm industry members.  Indeed, the Northern District of New York recently rejected the same claim from NSSF regarding a New York statute that, like Section 3930, establishes public nuisance liability as to firearm industry members.  *Nat'l Shooting Sports Found., Inc. v. James*, 2022 WL 1659192, at *4 (N.D.N.Y. May 25, 2022).

Second, Section 3930 meets the scienter requirement of the predicate exception.  The non-exhaustive examples provided by Congress specifically contemplate actions where a manufacturer or seller sells or distributes a firearm despite "knowing, or having reasonable cause to believe, that the actual buyer" was prohibited from possessing or receiving the product.  15 U.S.C. § 7903(5)(A)(iii)(II).  Under Section 3930(b), a firearm industry member may be liable if it "knowingly or recklessly" creates or contributes to a public nuisance by its conduct.  Section 3930(c) requires a member to implement reasonable controls—by implication, a member that fails to implement reasonable controls could be liable for knowing or having reasonable cause to believe the firearm would end up unlawfully sold or distributed.  PLCAA's text itself confirms that Section 3930 falls within the predicate exception.

Third, Section 3930 expressly requires that the firearm industry member's conduct be a proximate cause of the public nuisance. § 3930(e). The "harm to the public" must be "a reasonably foreseeable effect of the conduct, notwithstanding any intervening actions, including criminal actions by third parties." *Id.* There is nothing novel about SB 302's formulation of proximate cause. *See, e.g.*, *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 236 (3d Cir. 2017) ("[I]n proximate cause, foreseeability limits a defendant's liability to only the injuries that are reasonably foreseeable results of the defendant's actions." (citing Restatement (Third) of Torts § 29, cmt. j)); *DDRA Capital, Inc. v. KPMG, LLP*, 710 F. App'x 522, 531-32 (3d Cir. 2017) ("Plaintiffs' involvement does not necessarily break the chain of proximate cause, for where another party's intervening intentional act is reasonably foreseeable, a negligent defendant is not relieved of liability." (internal quotation marks and alterations omitted)). Because PLCAA does not preempt Section 3930, Count I must be dismissed.

**B.      Count II (Commerce Clause).**

Plaintiff contends Section 3930 violates the "dormant" aspect of the Commerce Clause by "directly regulating commerce that takes place entirely in other states" (Compl. ¶ 68) and by burdening "out-of-state commercial interests within the state" (Compl. ¶ 69). The dormant Commerce Clause prohibits states from impeding the ability of out-of-state businesses to compete with in-state businesses. *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006). "In considering whether a state law violates the dormant Commerce Clause, the inquiry is twofold: a court considers first whether 'heightened scrutiny' applies, and, if not, then considers whether the law is invalid under the *Pike*[6] balancing test." *Id.* Under heightened scrutiny, the plaintiff must demonstrate the statute "'discriminates against interstate

---

[6] *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).

commerce' in its purpose or effect," either by showing the statute "has extraterritorial effects that adversely affect economic production (and hence interstate commerce) in other states" or that the statute's purpose is to "disadvantage[] out-of-state businesses to benefit in-state ones." *Id.* at 261-62.  If the plaintiff cannot show the statute discriminates against interstate commerce, the *Pike* balancing test applies, under which the court determines "whether 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Id.* at 263 (quoting *Pike*, 397 U.S. at 142).

As an initial matter, Plaintiff's Commerce Clause claim directly undercuts its preemption claim in Count I.  In complaining about Section 3930's purported regulation of out-of-state firearm commercial interests, Plaintiff concedes that Section 3930 applies to the sale or marketing of firearm-related products such that Section 3930 falls within PLCAA's predicate exception.  *See James*, 2022 WL 1659192, at *4 n.4 ("The Court notes that Plaintiffs agree that [the challenged statute] expressly regulates firearms; their entire dormant Commerce Clause claim is necessarily predicated on it.").  Plaintiff cannot have it both ways.

Plaintiff also cannot show that Section 3930 discriminates against out-of-state commerce in purpose or effect.  The core of Plaintiff's claim is that Section 3930 regulates commerce occurring entirely outside of Delaware.  Compl. ¶¶ 63-69; POB 10-12.  But Section 3930 specifically defines a "firearm-related product" as one that is "sold, made, distributed, or marketed in [Delaware]," "intended to be sold, made, distributed, or marketed in [Delaware]," or "possessed in [Delaware], and it was reasonably foreseeable that the product would be possessed or used in

[Delaware]." § 3930(a)(2).[7]  Thus, conduct with no connection to Delaware falls outside of Section 3930's reach.  Attempting to invoke heightened scrutiny, Plaintiff raises the hypothetical scenario of a manufacturer and seller operating solely in Texas and Arkansas being held liable for an Arkansas native's misuse of a lawfully purchased firearm after moving to Delaware.  Compl. ¶ 64; POB 11.  But Plaintiff ignores the actual provisions of Section 3930: the locus of the analysis is whether the firearm industry member intended for, or it was reasonably foreseeable, the firearm to be in circulation in Delaware.  And even in Plaintiff's hypothetical scenario, Plaintiff fails to identify how it shows Section 3930 is discriminatory against or burdens out-of-state commerce to the benefit of Delaware commerce.

Section 3930 also easily passes muster under the *Pike* balancing test.  Section 3930 does not treat in-state firearm industry members differently from out-of-state members, and Plaintiff does not identify any in-state commercial interests that are favored under the statute.  And even if the statute were to have incidental effects on economic activity outside of Delaware or the in-state economic interests of out-of-state businesses, Section 3930 is aimed at a "legitimate local public interest" and any such burden on interstate commerce is not "clearly excessive" compared to the local benefits.  *Pike*, 397 U.S. at 142.  Section 3930's purpose is to "promote and protect the health, safety, and welfare of the people of Delaware" by providing redress to Delawareans confronting an "epidemic of gun violence."  SB 302 § 1.  Moreover, the quintessential civic functions of protecting the health, safety, and welfare of the state's citizens are fundamentally distinct from economic protectionist activity favoring in-state businesses.  *See United Haulers Ass'n, Inc. v.*

---

[7] Notably, Plaintiff mischaracterizes Section 3930(a)(2)c. by contending the statute defines a firearm-related product as one "merely '*possessed* in this State.'"  Compl. ¶ 63 (emphasis in original).  But mere possession is insufficient: Section 3930 requires that it was also "reasonably foreseeable" that the product would be possessed or used in Delaware.

*Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342-44 (2007); *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-40 (2008).  Because Plaintiff cannot show that any incidental effects on interstate commerce are "clearly excessive" compared to the local benefits to Delawareans, the Commerce Clause challenge to Section 3930 must be dismissed.

### C.      Count III (First Amendment).

Plaintiff contends that Section 3930 violates the First Amendment because it regulates marketing activities.  But contrary to Plaintiff's claim, Section 3930 does not discriminate against the content or viewpoint of the speaker simply because the statute addresses conduct by members of the firearms industry.  Plaintiff's position would mean that *any* industry-specific regulations would be considered content-discriminatory—a position that finds no support in First Amendment jurisprudence.  *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1477 (2022) (Breyer, J., concurring) (observing the wide range of regulations, such as census reporting, securities disclosure, and prescription drug labeling requirements, "that turn, often necessarily, on the content of speech" that would be implicated by a "formal rule that courts must strictly scrutinize regulations simply because they refer to particular content").

The marketing activities regulated by Section 3930 are, instead, viewpoint-neutral commercial speech, "broadly defined as expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990).  Here, the firearm industry member's marketing activity: (i) advertises (ii) a specific product (firearm-related products) and (iii) the member has economic motivation for the marketing.  *See id.* (articulating three-prong test for commercial speech under *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)).  Regulations of such commercial speech are subject only to intermediate

11

scrutiny. *Cent. Hudson Gas & Elec. Corp, v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). As a threshold inquiry, the commercial speech "must concern lawful activity and not be misleading" to be afforded First Amendment protection at all. *Id.* If the speech concerns lawful activity and is not misleading, the court then assesses (1) "whether the asserted governmental interest is substantial," (2) "whether the regulation directly advances the governmental interest asserted, and (3) "whether it is more extensive than is necessary to serve that interest." *Id.*

Here, the marketing activity Section 3930 addresses is not even protected commercial speech, as the statute is specifically concerned about "unlawful" and "unreasonable" conduct. *E.g.*, § 3930(a)(6), (b). For example, an advertisement promoting straw purchases or banned weapons as legal would likely both violate Section 3930 and fall outside of First Amendment protection. But even to the extent Section 3930 regulates lawful and not misleading marketing activity, it passes the *Central Hudson* analysis. The General Assembly has asserted a substantial governmental interest in protecting Delawareans against gun violence. Section 3930 provides a tool to do so by creating a cause of action against those who knowingly or recklessly engage in conduct that results in firearm products ending up in the hands of individuals who are not permitted to or should not possess them—marketing activity promotes the dissemination of these products. Section 3930's provisions are tailored to that goal, with specific limitations cabining when firearms industry members could be subject to liability at all. For example, a manufacturer knowingly targeting social media advertisements to suicidal individuals regarding a handgun's power could be subject to suit even if the advertisement itself is truthful about the product and does not violate any laws or regulations.

Plaintiff further contends that the regulation of marketing violates the First Amendment on vagueness grounds. Compl. ¶ 78; POB 16-17. Plaintiff speculates that Section 3930 is so vague

12

as to have a chilling effect on its members (Compl. ¶ 79; POB 16-17), but tellingly, asserts no allegations that any of its more than 9,000 members have pulled back marketing in response to SB 302 or are even contemplating doing so.  *See Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." (internal quotation marks omitted)).

### D.      Count IV (Second Amendment).

Plaintiff next claims Section 3930 violates the Second Amendment, contending "[c]ommerce in arms is . . . constitutionally protected" and the statute "infringes this essential component of the Second Amendment right to keep and bear arms."  Compl. ¶¶ 86-87.  Plaintiff's claim is fatally flawed because as an initial matter, the Second Amendment does not provide a cognizable Second Amendment right to corporations and other business entities.  *Gazzola v. Hochul*, 2022 WL 17485810, at *14 (N.D.N.Y. Dec. 7, 2022).  Furthermore, Section 3930 has no bearing on an individual's right to possess firearms and Second Amendment protection does not extend to such activity as selling, manufacturing, or marketing firearm products.  *Id.*; *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022) ("[T]he right to 'bear arms' refers to the right to wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." (internal quotation marks and alterations omitted)); *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding . . . laws imposing conditions and qualifications on the commercial sale of arms."); *Drummond v. Robinson Twp.*, 9 F.4th 217, 230 (3d Cir. 2017) ("We know of no court, modern or otherwise, to hold that the Second Amendment secures a standalone right to *sell* guns or range

time." (emphasis in original)).  Thus, Plaintiff's claim falls well outside the Second Amendment's scope and must be dismissed.

To the extent the Court even considers the Second Amendment claim, it must reject Plaintiff's sweeping, unsupported allegation that Section 3930 is inconsistent with historical tradition.  Compl. ¶ 87; POB 18.  Even a preliminary analysis of historical laws and regulations demonstrates that Section 3930 is part of a long tradition of nuisance law to regulate marketplaces and social behaviors and restrictions on the types of firearms products that could be sold and to whom firearms dealers could sell or distribute their products.  Rivas Decl. ¶¶ 8-13.

### E.     Count V (Due Process).

Finally, Plaintiff's claim that Section 3930 is void for vagueness, in violation of the due process clause of the Fourteenth Amendment, also fails.  "To succeed on a facial vagueness challenge, the plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications.'"  *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631 (3d Cir. 2013) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).  "A law is void for vagueness if it: '(1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement.'"  *Fruchtman v. Town of Dewey Beach*, 60 F. Supp. 3d 556, 563 (D. Del. 2014) (quoting *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008)).  Statutes regulating economic activity and civil statutes, as opposed to criminal laws, are subject to less scrutiny.  *Id.*  Accordingly, "to find an economic civil statute void for vagueness, it must be so vague as to be 'no rule or standard at all.'"  *CMR*, 703 F.3d at 632 (quoting *Boutilier v. I.N.S.*, 387 U.S. 118, 123 (1967)).

14

Contrary to Plaintiff's characterization of Section 3930's provisions as "hopelessly vague" (Compl. ¶ 93; POB 18), the statute provides fair notice to firearm industry members of what conduct is subject to potential liability.  Section 3930 specifies what entities and conduct it covers and defines such critical terms as "firearm-related product," "public nuisance," reasonable controls," and "straw purchaser."  § 3930(a).  The contours of required and proscribed conduct cannot be said to be "so vague and indefinite as really to be no rule at all."  *Boutilier*, 387 U.S. at 123.  Surely a firearm dealer would understand that, for example, knowingly selling a gun to a straw purchaser buying on behalf of a prohibited person could constitute a public nuisance under Section 3930.  Plaintiff further contends that Section 3930's use of the terms "unreasonable" and "reasonable" renders the entire regulatory structure an unconstitutional mystery.  Compl. ¶¶ 94-95; POB 18.  But "a statute is not void for vagueness merely because it uses the word 'reasonable' or 'unreasonable.'"  *United States v. Hsu*, 40 F. Supp. 2d 623, 628 (E.D. Pa. 1999).  The provisions of Section 3930 are written with specificity as to the types of conduct by firearm industry members that the statute contemplates could establish a public nuisance suit.  Plaintiff's inability to predict every single possible scenario that could arise under the statute does not render it invalid.

## III.   PLAINTIFF FAILS TO MEET ITS BURDEN TO OBTAIN PRELIMINARY INJUNCTIVE RELIEF.

### A.   Plaintiff is Unlikely to Succeed on the Merits.

As set forth above, Plaintiff fails to state a claim as to any of its challenges to SB 302.  Here, Plaintiff simply repackaged the Complaint's allegations into a motion for a preliminary injunction.  *Compare* D.I. 1 *with* D.I. 4.  Because the Complaint fails to state a claim, Plaintiff has not demonstrated a likelihood of success on the merits.  Furthermore, Plaintiff has not carried its burden in its facial challenges to show there are *no* applications of the statute that would be valid.

**B.**     **Plaintiff Has Not Established Irreparable Harm.**

Plaintiff fails to establish it faces irreparable harm if the Court denies the request for a preliminary injunction.  "The irreparable harm alleged must be actual and imminent, not merely speculative." *Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48, 49 (3d Cir. 2014). Plaintiff must "produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied." *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987).  Furthermore, the plaintiff must show that a preliminary injunction is "the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Inexplicably, Plaintiff waited nearly half a year after the enactment of SB 302 to bring suit and request a preliminary injunction.[8]  Plaintiff's own delay undermines its contention that it faces imminent, irreparable harm requiring urgent relief. *See Chestnut Hill Sound Inc. v. Apple Inc.*, 2015 WL 6870037, at *4 (D. Del. Nov. 6, 2015) (noting that a plaintiff's delay is a "significant factor" in determining the plaintiff has not established irreparable harm); *Lanin v. Borough v. Tenafly*, 515 F. App'x 114, 117-18 (3d Cir. 2013) (affirming district court's reliance on plaintiff's "delay in seeking a preliminary injunction as sufficient proof that the risk of immediate irreparable harm did not exist").

Plaintiff suggests that simply alleging "constitutional injuries" is itself sufficient "to justify injunctive relief."  POB 19.  Not so.  *See Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."); *Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir.

---

[8] Of course, NSSF was fully aware of SB 302's enactment, promptly issuing a news alert criticizing the bill and similar statutes passed by other states as politically driven authorizations of "junk lawsuits." *White House backing state moves to chip away PLCAA* (July 26, 2022), https://www.nssf.org/articles/white-house-backing-state-moves-to-chip-away-plcaa/.

2003) ("While other circuits relax the irreparable harm requirement in First Amendment cases, our Court requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm.").[9]

Plaintiff contends that its members face immediate, irreparable harm by being forced to "consider[] steps" to comply with Section 3930 to avoid future liability.  POB 19.  However, the costs of complying with government regulation are insufficient to show irreparable harm.  *See A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 527 (3d Cir. 1976) ("Any time a corporation complies with a government regulation that requires corporate action, it spends money and loses profits; yet it could hardly be contended that proof of such an injury, alone, would satisfy the requisite for a preliminary injunction."); *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("[O]rdinary compliance costs are typically insufficient to constitute irreparable harm."). Furthermore, the only evidence Plaintiff submits is declarations from manufacturers Beretta U.S.A. Corp., Sturm, Ruger & Company, Inc., and SIG Sauer, Inc.  The manufacturers speculate about cataclysmic effects of Section 3930 on the companies' operations and finances, to the point of raising the specter that "the only way" the companies could "avoid liability" would be to "cease all advertising or promotion of its firearm products" in Delaware and nationwide.  Reh Decl. ¶ 13; Reid Decl. ¶ 17; Shawver Decl. ¶ 13.  The manufacturers contend that they "will continually be at risk of litigation and potential liability unless [they] cease[] doing business."  Reh Decl. ¶ 17; Reid Decl. ¶ 18; Shawver Decl. ¶ 14.  But tellingly, no manufacturer points to any actual measures it has taken in the nearly half a year between the enactment of SB 302 and this lawsuit, nor any measures it is considering taking—much less any compliance measures that are so costly as to

---

[9] Plaintiff's citation to *Stilp v. Contino* is inapposite: in that particular case, the defendant conceded that if plaintiff was likely to succeed on the merits, the other elements of a preliminary injunction were satisfied.  613 F.3d 405, 409 (3d Cir. 2010).

jeopardize the company's operations and viability.   Indeed, the manufacturers' speculation is directly undermined by evidence that they have, to date, continued to actively promote and market their products within Delaware.  Caruso Decl. ¶¶ 4-21.  The manufacturers' websites, social media, and marketing communications promote their latest products and direct customers to where they can purchase those products in Delaware.  *Id.*

Plaintiff also claims that its members face irreparable harm simply by having to defend against suits it contends are barred by PLCAA.  POB 19-20.  But the mere threat of a potential lawsuit does not constitute irreparable harm.  *Sherwin-Williams Co. v. Cty. of Delaware*, 968 F.3d 264, 270 (3d Cir. 2020).  Plaintiff's members would be free to raise their claimed immunity under PLCAA as a defense in such a lawsuit, and Plaintiff has "failed to explain why such defenses would be inadequate."  *Id.*  Plaintiff assumes that the Eleventh Amendment would prevent it from recovering monetary losses in a litigation brought by the Attorney General,[10] but even if so, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *F.T.C. v. Std. Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

Finally, Plaintiff ominously predicts widespread bankruptcy among its members due to "a litigation firestorm" wrought by Section 3930.  POB 20.  But this is pure speculation and Plaintiff does not attempt to submit any evidence.  *See Instant Air Freight*, 882 F.2d at 802 (holding district court abused its discretion in finding plaintiff faced irreparable injury where there were no "financial statements or projections in the record indicating that [plaintiff] will be forced into bankruptcy").

---

[10] Plaintiff conspicuously omits any such argument regarding lawsuits by private parties under Section 3930.

**C.**     <u>**The Balance of the Harms Weighs Against Plaintiff.**</u>

The balance of the harms weighs in favor of the public interest and against a preliminary injunction. As an initial matter, Plaintiff is incorrect that if it demonstrates a likelihood of success and irreparable harm, the Court should skip straight to issuing a preliminary injunction. POB 20. Under the Third Circuit's analysis, Plaintiff must meet the first two "gateway" factors to establish it is entitled to a preliminary injunction—if it does not, the Court's inquiry is at an end and no injunction will issue, but the inverse is not true. If Plaintiff meets the first two factors, the Court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179. Even if Plaintiff met the first two factors, the Court should decline to issue an injunction because the harm posed to the State and the public interest outweighs any harm to Plaintiff.

Here, the only irreparable harm Plaintiff suggests it faces absent a preliminary injunction is purely economic. In contrast, SB 302 was enacted to provide one tool for Delaware to combat the devastation of gun violence in the state. As SB 302's synopsis sets forth, the statute was named after Keshall "KeKe" Anderson, an innocent victim killed in a drive-by shooting involving a firearm purchased through a straw purchase. Ex. 2.[11] The statute aims to promote the health, safety, and welfare of Delawareans by holding bad actors accountable for their role in gun violence—which Plaintiff does not dispute is a legitimate and serious policy interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, C.J., in chambers); *see also Maryland v. King*, 567 U.S. 1301,

---

[11] *See also* Xerxes Wilson, *Teens plead guilty in shooting death of Keshall 'Keke' Anderson*, The Del. News J., Jan. 23, 2019, https://www.delawareonline.com/story/news/2019/01/23/teen-pleads-guilty-shooting-death-wilmington-teen-keshall-keke-anderson/2650146002/.

1303 (2012) (Roberts, C.J., in chambers) ("That Maryland may not employ a duly enacted statute to help prevent these injuries constitutes irreparable harm.").

Plaintiff contends that if it demonstrates a likelihood of success on the merits, then *a fortiori* the public interest favors a preliminary injunction.  POB 20.  But Plaintiff misstates the import of the cases it cites to create a non-existent rule.  *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001) (finding that in a proceeding against an organization for violating the Controlled Substances Act, the district court's exercise of discretion was limited to determining whether an injunction was the appropriate remedy, not whether to enforce the Act); *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 263 (3d Cir. 2020) (finding that an injunction requiring a licensing board to provide testing accommodations for a medical student furthered the public interest in eradicating discrimination against persons with disabilities and in increasing the number of physicians); *Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781, 788 (4th Cir. 1991) (finding district court erred by not engaging in a balance of hardships analysis in deciding to enjoin a state regulation, even though plaintiff had demonstrated the regulation was likely unconstitutional); *Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020) (finding the public interest would not be harmed by permanent injunction requiring transit system to display plaintiff's advertisement after plaintiff proved a First Amendment violation).  Plaintiff has fallen short of its burden to establish that the balance of harms weighs in favor of the extraordinary remedy of a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion for a preliminary injunction and dismiss the Complaint with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Zi-Xiang Shen*
Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
*Attorneys for Defendant*

Date: January 20, 2023