# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> KATHY JENNINGS, ATTORNEY GENERAL OF THE STATE OF DELAWARE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )  C.A. No. 1:22-cv-01499-RGA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S REPLY-RESPONSE BRIEF
## IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**OF COUNSEL**

PAUL D. CLEMENT*
ERIN E. MURPHY*
Matthew D. Rowen*
Nicholas M. Gallagher*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
(*admitted *pro hac vice*)

LEWIS BRISBOIS
    BISGAARD & SMITH LLP
Sean M. Brennecke (No. 4686)
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6009
Sean.Brennecke@LewisBrisbois.com

*Attorneys for Plaintiff*

Dated: February 3, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT ................................................................................................................. 1

I.      NSSF Is Likely To Succeed On The Merits Of Its Claims ................................. 1

      A.      Section 3930 Is Preempted ...................................................................... 3

      B.      Section 3930 Violates the Commerce Clause .......................................... 9

      C.      Section 3930 Violates the First Amendment and is Unconstitutionally Vague ...................................................................................................... 10

      D.      Section 3930 Violates the Second Amendment ..................................... 14

II.     The Remaining Factors Favor An Injunction .................................................. 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996) ........................................................................................... 12

*Ableman v. Booth*,
  62 U.S. 506 (1858) ............................................................................................. 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 17

*Baldwin v. G.A.F. Seelig, Inc.*,
  294 U.S. 511 (1935) ............................................................................................. 9

*Bank of Am. Corp. v. City of Miami*,
  581 U.S. 189 (2017) ............................................................................................. 7

*Berdeaux v. OneCoin Ltd.*,
  561 F.Supp.3d 379 (S.D.N.Y. 2021) ................................................................... 6

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
  476 U.S. 573 (1986) ........................................................................................... 10

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) ................................................................... 7, 8, 9, 15

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
  492 F.3d 484 (4th Cir. 2007) ............................................................................... 9

*Cent. Hudson Gas & Elec. Corp, v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ........................................................................................... 12

*Cigar Ass'n of Am., Inc. v. City of Phila.*,
  2021 WL 5505406 (3d Cir. Nov. 24, 2021) ....................................................... 18

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
  142 S.Ct. 1464 (2022) ........................................................................................ 11

*City of N.Y. v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) ...................................................................... 4, 5, 6

*DiMartino v. Buckles*,
  129 F.Supp.2d 824 (D. Md. 2001) ...................................................................... 6

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ................................................................................. 14

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ........................................................ 15

*FEC v. Wis. Right to Life*,
   551 U.S. 449 (2007) ...................................................................... 1

*Frein v. Pa. State Police*,
   47 F.4th 247 (3d Cir. 2022) ......................................................... 18

*Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*,
   803 F.3d 144 (3d Cir. 2015) ........................................................... 6

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ....................................................................... 2

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
   527 U.S. 173 (1999) ..................................................................... 12

*Hamilton v. Beretta U.S.A. Corp.*,
   96 N.Y.2d 222 (N.Y. 2001) ............................................................ 8

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989) ..................................................................... 10

*Holmes v. Secs. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ....................................................................... 7

*IFM Therapeutics, Inc. v. Lycera Corp.*,
   2018 WL 4223192 (D. Del. Aug. 31, 2018) .................................... 6

*Ileto v. Glock, Inc.*,
   565 F.3d 1126 (9th Cir. 2009) ........................................................ 5

*In re Academy*,
   625 S.W.3d 19 (Tex. 2021) ........................................................... 19

*Koons v. Reynolds*,
   2023 WL 128882 (D.N.J. Jan. 9, 2023) ................................... 15, 16

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) ..................................................................... 12

*Luis v. United States*,
   578 U.S. 5 (2016) ......................................................................... 14

*Minneapolis Star Trib. Co. v. Minn. Comm'r*,
   460 U.S. 575 (1983) ..................................................................... 14

*N.J. Bankers Ass'n v. N.J. Att'y Gen.*,
    49 F.4th 849 (3d Cir. 2022) ........................................................... 3

*N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*,
    142 S.Ct. 2111 (2022) ........................................................... 15, 17

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ........................................................... 19

*Richardson v. Cascade Skating Rink*,
    2022 WL 2314836 (D.N.J. June 28, 2022) ........................................................... 16

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S.Ct. 63 (2020) ........................................................... 19

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) ........................................................... 2

*Sherwin-Williams Co. v. Cnty. of Delaware*,
    968 F.3d 264 (3d Cir. 2020) ........................................................... 19

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ...........................................................11, 12

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
    967 F.3d 295 (3d Cir. 2020) ........................................................... 16, 17

*Stilp v. Contino*,
    613 F.3d 405 (3d Cir. 2010) ........................................................... 18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................... 1

*TitleMax of Del. v. Weissman*,
    24 F.4th 230 (3d Cir. 2022) ........................................................... 10

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ........................................................... 14, 15

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ........................................................... 13

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
    537 U.S. 371 (2003) ........................................................... 5

**Constitutional Provision**

U.S. Const. art. VI, cl. 3 ........................................................... 16

**Statutes**

15 U.S.C. §7901(a)(6) ........................................................................... 4

15 U.S.C. §7901(a)(7) ................................................................... 4, 9, 15

15 U.S.C. §7901(b)(1) ........................................................................... 4

15 U.S.C. §7902(a) ............................................................................... 3

15 U.S.C. §7903(5)(A) ................................................................. *passim*

Del. Stat. Ann., tit. 10, §3930 ...................................................... *passim*

N.J. Stat. Ann. §2C:58-33 ..................................................................... 3

N.J. Stat. Ann. §2C:58-34 ..................................................................... 3

N.J. Stat. Ann. §2C:58-35 ..................................................................... 3

**Other Authorities**

*City of Buffalo Files Lawsuit Against Firearms Companies*,
    City of Buffalo (Dec. 20, 2022), https://bit.ly/3whSaHJ ...................... 2

R.F.V. Heuston, *Salmond on the Law of Torts* (17th ed. 1977) ...................... 6

*Mayor Evans Announces City Lawsuit Against Firearms Companies*,
    City of Rochester (Dec. 20, 2022) https://bit.ly/3JAk21J ...................... 2

Order, *Nat'l Shooting Sports Foundation v. Platkin*,
    No. 3:22-cv-06646 (D.N.J. Jan. 31, 2023) ................................. *passim*

Delaware Senate Bill 302 ("§3930") is preempted and unconstitutional.  In trying to defend it, Delaware mischaracterizes NSSF's claims, fails to respond to several of NSSF's arguments, and ignores contrary precedent.  The Court should enjoin §3930—as a district court in New Jersey recently did vis-à-vis New Jersey's virtually identical law—and deny the state's motion to dismiss.

## ARGUMENT

### I.  NSSF Is Likely To Succeed On The Merits Of Its Claims.

At the outset, Delaware argues that because no NSSF member is "currently facing any proceedings under [§3930]," NSSF's claims must "amount to a pre-enforcement, facial challenge," and, therefore, NSSF must show that §3930 could not constitutionally be applied to anyone under any circumstances.  Del.Br.5.  Delaware either misunderstands NSSF's claims or misunderstands what it means for a law to be invalid "on its face"—or perhaps both.

Delaware is certainly correct that this is a pre-enforcement challenge.  But not every pre-enforcement suit is "facial" in the sense that it seeks to have the challenged law invalidated in all applications.  Plaintiffs routinely bring (and win) pre-enforcement challenges to a law *as it would apply to their own anticipated conduct*.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *FEC v. Wis. Right to Life*, 551 U.S. 449 (2007).  That is what NSSF has done here, arguing that §3930 cannot lawfully be applied to hold its members liable for conduct §3930 proscribes, however vaguely.  NSSF has asked this Court to invalidate §3930 to the extent it is preempted by the PLCAA; directly regulates out-of-state commerce; discriminates against and unduly burdens interstate commerce; and conflicts with the First, Second, and Fourteenth Amendments.  Those claims are "facial" in the sense that the constitutional defects are apparent in the text of §3930—i.e., "on its face."  But that does not mean that they necessarily require the Court to invalidate the statute in its entirety.  For instance, it is clear from the text of §3930 alone that the statute regulates

NSSF members' conduct that takes place entirely in other states. NSSF.Br.10-13. But that means that §3930 is invalid under the Commerce Clause as applied to lawsuits seeking to hold gun industry members liable for their out-of-state conduct that is lawful where it takes place. It does not mean that the whole statute has to go. *See, e.g.*, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (en banc) (holding that a California statute "facially violates the 'dormant' Commerce Clause," but invalidating it only to the extent it "regulat[es] sales outside the state of California"). So too with NSSF's preemption claim. If the Court thinks there may be non-preempted applications of §3930 (e.g., lawsuits based on a knowing violation of a statute *other than* §3930), it can simply hold that §3930 cannot validly be applied to hold industry members liable for injuries caused by third parties' unlawful misuse of firearms that the industry members lawfully manufactured, marketed, or sold, and leave for another day whether the statute has any other potentially valid applications. NSSF need not *also* allege or prove that §3930 is unconstitutional as to hypothetical applications that, to the extent they exist, it does not challenge.

To be sure, "preenforcement, as-applied challenges" must challenge a "discrete and well-defined" application of a law that is "likely to occur." *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007). But NSSF has clearly done that. No one disputes that NSSF members manufacture, sell, and market bearable arms, or that §3930 applies to that conduct that makes the exercise of Second Amendment rights possible. And NSSF members have *already* been sued under statutes almost identical to §3930, in lawsuits pressing exactly the sort of theories that NSSF has sued here to block. *See, e.g.*, *City of Buffalo Files Lawsuit Against Firearms Companies*, City of Buffalo (Dec. 20, 2022), https://bit.ly/3whSaHJ; *Mayor Evans Announces City Lawsuit Against Firearms Companies*, City of Rochester (Dec. 20, 2022) https://bit.ly/3JAk21J. That likely explains why Delaware has not raised any justiciability objections. A "credible threat of prosecution under an

allegedly unconstitutional statute constitutes an injury in fact" so long as the plaintiff or its members intend to engage in conduct "arguably affected with a constitutional interest" and "arguably … proscribed by [the] statute." *N.J. Bankers Ass'n v. N.J. Att'y Gen.*, 49 F.4th 849, 855 (3d Cir. 2022). Those factors are plainly satisfied here. There is thus no need to wait for lawsuits to be filed under §3930 to acknowledge the defects that are plain on the statute's face.

### A. Section 3930 Is Preempted.

Under the PLCAA, civil actions against firearm industry members to redress harm resulting from a third party's misuse of a firearm "may not be brought." 15 U.S.C. §§7902(a), 7903(5)(A). Delaware does not deny that §3930 authorizes actions that fit that bill. Instead, it claims that §3930 is "a State or Federal statute applicable to the sale or marketing of" firearms within the meaning of the PLCAA's predicate exception. *Id.* §7903(5)(A)(iii). By the state's telling, the predicate exception exempts from the PLCAA's reach any statute that, by its terms, applies to manufacturers and sellers of firearms and related products, even if it just codifies the same common-law causes of action that Congress enacted the PLCAA to preempt. That wooden reading of the predicate exception cannot be reconciled with text, context, or common sense—as Judge Quraishi recently recognized in rejecting New Jersey's similar effort to justify its nearly identical statute on the same basis.[1] *See* Order at 13, *Nat'l Shooting Sports Foundation v. Platkin*, No. 3:22-cv-06646 (D.N.J. Jan. 31, 2023), Dkt.17 ("NJ.PI.Op.") (ruling that accepting this wooden reading of §7903(5)(A)(iii) "would run afoul of the goals of the PLCAA" and "directly conflict with the intention of Congress," and concluding that New Jersey's statute is preempted by the PLCAA).

Congress did not leave anyone guessing as to what it sought to accomplish in the PLCAA. The statute says on its face that its "purpose[]" is "[t]o prohibit causes of action against

---

[1] Section 3930, the Delaware statute at issue here, is a near-carbon copy of New Jersey A1765, the statute Judge Quraishi enjoined. *Compare* §3930, *with* N.J. Stat. Ann. §§2C:58-33, -34, -35.

manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. §7901(b)(1). Whether those "causes of action" are grounded in the common law or a statute is of no moment under the PLCAA. In Congress' estimation, it is the very act of trying to "impos[e] liability on an entire industry for harm that is solely caused by others," *id.* §7901(a)(6), that reflects not "a bona fide expansion of the common law," but rather "an abuse of the legal system," *id.* §7901(a)(6)-(7). Any claim that the predicate exception empowers states to revive the very same abusive litigation that Congress unambiguously enacted the PLCAA to foreclose thus must be met with greatest of skepticism and compelled by the plainest of text. Yet far from confirming the state's unlikely reading of the predicate exception, the PLCAA refutes it.

As with all statutory text, the meaning of the predicate exception, and its phrase "applicable to the sale or marketing of [firearms]," *id.* §7903(5)(A)(iii), "must be determined here by reading [it] in the context of the surrounding language and of the statute as a whole." *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 400 (2d Cir. 2008). Indeed, the state implicitly acknowledges that the predicate exception cannot be read literally to cover any and all state statutes capable of being applied to the firearms industry, as it appears to concede that the PLCAA preempts statutory public nuisance and other common-law-type claims brought pursuant to state statutes of general, rather than firearms-specific, applicability. Del.Br.7. But Delaware fails to come to grips with the guiding interpretative principle that led both the Second and the Ninth Circuit to reach that conclusion—namely, to read the predicate exception as empowering states to resuscitate the very suits Congress passed the PLCAA to shut down "would allow the predicate exception to swallow the statute." *City of N.Y.*, 524 F.3d at 402-03; *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136

(9th Cir. 2009) ("the text and purpose of the PLCAA shows that Congress intended to preempt general tort theories of liability even in jurisdictions … that have codified such causes of action"). That same logic applies with full force—indeed, applies *a fortiori*—to state statutes that single out the firearms industry *alone* for the very litigation the PLCAA was enacted to halt.[2]

In reality, the predicate exception itself makes clear that the words "statute[s] applicable to the sale or marketing of [a firearm]" are not nearly as broad as Delaware would like. Those words do not stand alone. They are immediately preceded by the words "knowingly violated," and they are followed by two illustrative examples, each of which involves a violation of a concrete obligation or prohibition—namely, "ma[king] any false entry in" a required record of sales, 15 U.S.C. §7903(5)(A)(iii)(I), and "aid[ing]" or "abet[ing]" a straw purchase, *id.* §7903(5)(A)(iii)(II). Together, those textual indicators confirm that the predicate exception covers only laws that impose the kinds of concrete obligations or prohibitions that industry members can "knowingly violate." As Judge Quraishi put it in the New Jersey case, given the two "illustrative examples" in the predicate exception, "basic principles of interpretation" compel the conclusion that "the general 'applicable to' language must be 'construed to embrace only objects similar to those enumerated by' the two specific examples that follow.'" NJ.PI.Op.13 (first quoting 15 U.S.C. §7903(5)(A)(iii), then quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003)). A law that, like §3930, simply tells industry members to "act reasonably" when manufacturing, selling, or marketing firearms and related products, and allows them to be held liable for the distant consequences of others' misconduct, manifestly does not fit that bill. Any

---

[2] To the extent Delaware suggests that the statutes in *City of New York v. Beretta* and *Ileto v. Glock* did not apply to the marketing and sales of firearms *at all*, Del.Br.7, that is plainly wrong. The Second and Ninth Circuits held that those statutes were *preempted* as applied to claims premised on the sale and marketing of firearms, not that they did not apply to such conduct in the first place. *See City of N.Y.*, 524 F.3d at 399-404; *Ileto*, 565 F.3d at 1131-38.

other conclusion would produce the "[a]bsurd[]" result of making it trivially easy for states to evade the PLCAA's core command. *City of N.Y.*, 524 F.3d at 402-03; *see also* NJ.PI.Op.12-13.

Delaware resists the conclusion that "knowingly" means "knowingly," homing in on the fact that one of the textually enumerated examples in the predicate exception allows suit for a sale to a straw purchaser where the dealer knows or has "reasonable cause to believe" that the sale is a straw purchase. *See* Del.Br.7 (citing 15 U.S.C. §7903(5)(A)(iii)(II)). Delaware asserts, without citation, that "reasonable cause to believe" equates to "recklessness," and hence that when Congress said "knowingly," it really meant "knowingly *or recklessly*"—i.e., the language of §3930. Del.Br.7. That is simply wrong. "[R]easonable cause to believe" requires *actual knowledge* of information that suffices to put one on notice that the firearm is really being purchased by someone who is prohibited from possessing it.[3] *See, e.g.*, *DiMartino v. Buckles*, 129 F.Supp.2d 824, 827-28 (D. Md.) (discussing whether information the defendant knew was sufficient to establish "reasonable cause to believe" that the purchaser was ineligible), *aff'd sub nom. DiMartino v. Buckley*, 19 F.App'x 114 (4th Cir. 2001). Recklessness, by contrast, "is the doing of something which in fact involves a grave risk to others, *whether the doer realises it or not*." R.F.V. Heuston, *Salmond on the Law of Torts* 194 (17th ed. 1977) (emphasis added). That is a significantly lower standard than "knowing," which is what the PLCAA requires of predicate statutes.[4] *See* 15 U.S.C. §7903(5)(A)(iii). Moreover, the predicate exception requires the defendant to have "knowingly *violated*" a covered statute. *Id.* (emphasis added). A defendant does

---

[3] It is also the basic formulation used to describe constructive *knowledge*. *See, e.g.*, *IFM Therapeutics, Inc. v. Lycera Corp.*, 2018 WL 4223192, at *8 (D. Del. Aug. 31, 2018) ("Constructive knowledge is the '[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" (alteration in original) (quoting *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 148 (3d Cir. 2015))).

[4] Recklessness is also "a lower standard" than "constructive knowledge." *E.g.*, *Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 412 (S.D.N.Y. 2021).

not "knowingly violate" a statute by engaging in conduct that it does not know creates the risk that the statute makes it unlawful to create. That might be a reckless violation; it is not a knowing one.

Furthermore, as Judge Quraishi recognized in finding that NSSF is likely to succeed on its claim that New Jersey's nearly identical firearm-specific public nuisance statute is preempted, in light of the predicate exception's "knowingly requirement," it "is contrary to the PLCAA to hold an industry member liable who complies with all laws but did not know that it failed to employ 'reasonable procedures, safeguards, and business practices,' or has conducted its lawful business in a manner so 'unreasonable under all the circumstances' that it can be said to have 'contribute[d] to' 'a condition … which contributes to the injury or endangerment of the health, safety, peace, comfort, or convenience of others.'" NJ.PI.Op.12 (alterations in original).

Making matters worse, §3930 does not require anything close to proximate cause, as it permits the imposition of liability for far-flung harms brought about by the criminal misconduct of independent third parties. §3930(c). That too cannot be reconciled with the plain text of the predicate exception, which exempts only actions in which the defendant "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, *and the violation was a proximate cause of the harm for which relief is sought*." 15 U.S.C. §7903(5)(A)(iii) (emphasis added). Delaware insists that §3930 effectively requires proximate cause because it requires the "harm" occasioned by a third party's misconduct to have been "foreseeable." Del.Br.8. That is a highly dubious claim, as "foreseeability alone" is generally "*not* sufficient to establish proximate cause." *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) (emphasis added); *see also, e.g.*, *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Indeed, as the Third Circuit made clear in *Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536 (3d Cir. 2001), a case in which a municipality brought a "public nuisance claim" against "handgun

manufacturers" alleging that "the marketing and distribution of handguns … created and contributed to the widespread criminal use of handguns in the County," *id.* at 538-39, "proximate cause" is a more stringent requirement than the requirement to show "that conduct … merely contribute[] to the source of the interference," *id.* at 541 (emphasis omitted).

But even setting that problem aside, it is indeed quite "novel," *contra* Del.Br.8, to declare, as §3930 does, that the causation analysis cannot take into account "any intervening actions, including criminal actions by third parties." §3930(e). The Third Circuit held in *Camden County* that the manufacture and sale of lawful firearms is "simply too attenuated" from third parties' misuse of those arms to satisfy the causation element demanded by traditional public nuisance law (which itself has always been somewhat less stringent when it comes to causation than other torts). 273 F.3d at 541 ("In the initial steps, the manufacturers produce lawful handguns and make lawful sales to federally licensed gun distributors, who in turn lawfully sell those handguns to federally licensed dealers. Further down the chain, independent third parties, over whom the manufacturers have no control, divert handguns to unauthorized owners and criminal use."). Under traditional notions of proximate cause, manufacturers in such circumstances "may not be held responsible 'without a more tangible showing that the defendants were a direct link the causal chain that resulted in the plaintiffs' injuries, and that the defendants were realistically in a position to prevent the wrongs.'" *Id.* (quoting *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 234 (N.Y. 2001) (finding no duty because gun manufacturers did not control criminals with guns, and injuries were too remote)). Now Delaware wants to codify the exact same rudderless theory that the Third Circuit rejected as unfounded two decades ago. The PLCAA makes clear that it cannot.

Far from reflecting any known conception of proximate cause, §3930's expansive causation regime is precisely the kind of non-"bona fide expansion of the common law," lacking

"foundation in hundreds of years of the common law and jurisprudence of the United States," that the PLCAA forecloses. 15 U.S.C. §7901(a)(7); *see also Camden Cnty.*, 273 F.3d at 540-41. For that reason too, §3930 authorizes suits that the PLCAA preempts.

**B.      Section 3930 Violates the Commerce Clause.**

Delaware fundamentally misunderstands the Commerce Clause. As Delaware notes (at 9), NSSF's principal contention is that §3930 violates the Commerce Clause because (and to the extent that) it directly regulates lawful commerce in arms that occurs wholly outside the state. *See* Compl. ¶¶61-68; NSSF.Br.10-12. Delaware pointedly does not deny that "a manufacturer and seller operating solely in Texas and Arkansas," respectively, each could "be[] held liable for an Arkansas native's misuse of a lawfully purchased firearm after moving to Delaware" if a Delaware judge found it "'reasonably foreseeable that the product would be possessed or used in [Delaware].'" Del.Br.9-10 (alteration in original) (quoting §3930(a)(2)). Instead, it argues that whenever §3930(a)(2)'s foreseeability element is satisfied, out-of-state manufacturing and out-of-state selling no longer count as "commerce occurring entirely outside of Delaware." Del.Br.9-10 & n.7.

That is patently wrong. The foundational case here is *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935). *Baldwin* involved a New York law that, like §3930, was enacted for the health and safety of in-state residents. *See id.* at 523 ("The end to be served [by the law] is the maintenance of a regular and adequate supply of pure and wholesome milk."). The law applied to out-of-state sales only if the milk sold therein was intended for resale in the state; indeed, it "applied only to milk that would eventually be sold to New York consumers." *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 491 (4th Cir. 2007) (discussing *Baldwin*). Yet the Supreme Court still held the law unconstitutional, *see Baldwin*, 294 U.S. at 521, because it regulated commerce in other states—and "the 'Commerce Clause … precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, *whether or*

*not the commerce has effects within the State.*'" *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (emphasis added) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (plurality op.)).

Section 3930 equally applies to conduct (including the same conduct, selling) in other states if it is foreseeable that the products involved will wind up in Delaware. It is thus equally *per se* invalid to that extent, *id.*, as the "mere fact that" a law is "triggered only by" in-state effects "does not validate the law if it regulates … out-of-state transactions," *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986), which §3930 plainly does.

Delaware ignores all of this precedent and proceeds instead from the premise that the question is whether §3930 "discriminat[es] against or burdens out-of-state commerce to the benefit of Delaware commerce." Del.Br.10. But the nature or extent of the "burdens" a state law imposes on out-of-state commerce is beside the point when it comes to a claim, like NSSF's, that the law is *per se* invalid under the *Baldwin-Healy* line of cases prohibiting states from regulating extraterritorial conduct. Discrimination and balancing come into play only when a state law does *not* regulate conduct "wholly outside [the state]." *TitleMax of Del. v. Weissman*, 24 F.4th 230, 240 (3d Cir. 2022). Because §3930 imposes liability for out-of-state conduct whenever it has in-state effects, it is *per se* invalid to that extent. *Healy*, 491 U.S. at 332, 335-36.[5]

**C.    Section 3930 Violates the First Amendment and is Unconstitutionally Vague.**

1. Section 3930 imposes speaker-, content-, and viewpoint-based speech restrictions. Its marketing restrictions apply *only* to firearm industry members (speaker), *only* to marketing about

---

[5] Delaware also argues that "Plaintiff's Commerce Clause claim directly undercuts its preemption claim" because NSSF supposedly "concede[s] that Section 3930 applies to the sale or marketing of firearm-related products such that Section 3930 falls within the PLCAA's predicate exception." Del.Br.9. Delaware is mistaken. To be sure, NSSF does not dispute that §3930 applies to the sale or marketing of firearms. But whether §3930 is a "statute applicable to the sale or marketing of" firearms within the meaning of 15 U.S.C. §7903(5)(A)(iii) is a very different question, as Delaware itself recognizes by taking no issue with *City of New York* and *Ileto*.

firearms products (content), and *only* to materials promoting firearms (viewpoint). NSSF.Br.13-14. Its speech restrictions are thus subject to strict scrutiny. NSSF.Br.15-16. Delaware does not even try to argue that §3930 can satisfy that demanding standard; it has therefore forfeited any response on that score.

The arguments it does make fare no better. Delaware's entire basis for claiming that §3930 "does not discriminate" based on "content" is the *ipse dixit* that, if §3930 is content discriminatory, then "*any* industry-specific regulations would be considered content-discriminatory." Del.Br.11. That is not so much an argument as an admission. Even the quotation Delaware uses to support its position explicitly discusses regulations "that turn … on the content of speech." Del.Br.11 (*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S.Ct. 1464, 1477 (2022) (Breyer, J., concurring)). And as the majority opinion in that case explained, "[a] regulation of speech" like §3930 "is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed.'" *City of Austin*, 142 S.Ct. at 1471 (first alteration added). Section 3930 does exactly that: It applies only to "marketing of a firearm-related product." §3930(b). In stark contrast to the speech-"agnostic" sign ordinance in *City of Austin* that "require[d] an examination of speech only in service of drawing neutral, location-based lines," *City of Austin*, 142 S.Ct. at 1471, Delaware's new statute is as content-based as it gets.

"More than that, the statute disfavors specific speakers, namely," manufacturers and sellers of firearms. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011). That is no accident. As NSSF explained in its opening brief (and the state pointedly does not deny), §3930 limits liability to only gun-related speech by industry members—as opposed to speech about guns by, e.g., the state's amici—presumably because such speech is more likely to communicate a *view* the state dislikes:

Guns are lawful products that law-abiding citizens can and should, and have a Second Amendment right to buy (from gun industry members) to use for lawful purposes like self-defense. Section 3930 is thus "designed to impose a specific, content-based burden on protected expression. It follows that heightened judicial scrutiny is warranted." *Id.* at 565.

The state argues that the speech §3930 covers deserves lesser protection for two reasons. Neither is persuasive. The state first argues that "the marketing activity Section 3930 addresses is not even protected commercial speech, as the statute is specifically concerned about 'unlawful' and 'unreasonable' conduct." Del.Br.12. But a state cannot evade the strictures of the First Amendment through the simple expedient of declaring the marketing of lawful products "unlawful" or "unreasonable conduct." In all events, the state's benighted description of the statute is belied by its text, which makes clear—as the state cannot help but admit—that "Section 3930 regulates lawful and not misleading marketing activity." Del.Br.12. Truthful, non-misleading speech promoting a lawful product is *protected* by the First Amendment, even if the product has known deleterious health effects. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (tobacco); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 184-85 (1999) (gambling); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 504 (1996) (liquor).

Delaware is thus left arguing (at 11-12) that §3930 satisfies "intermediate scrutiny[ under] *Cent. Hudson Gas & Elec. Corp, v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)." But, as explained, intermediate scrutiny is not the right standard. Unlike most commercial speech regulations, §3930 is content-, speaker-, and viewpoint-based, so it must satisfy something more stringent. It cannot, as the state's failure to defend §3930 under heightened scrutiny confirms. Nor can §3930 even satisfy the *Central Hudson* standard. According to the state, §3930 "protect[s] Delawareans against gun violence" "by creating a cause of action against those who knowingly or

recklessly engage in … marketing activity promot[ing] the dissemination of [firearms]." Del.Br.12. But knowingly marketing lawful products (whether described as "conduct" or speech) *is fully protected under the First Amendmen*t—not something a state can protect its citizens from.

Delaware also cannot help but illustrate the root problem with §3930's speech restrictions. The statute does not just reach speech that is "unlawful" or misleading; it reaches any "marketing activity [that] promotes the dissemination of [firearms]." Del.Br.12; *see* §3930(b). The statute thus gives public and private parties carte blanche to sue industry members for marketing their lawful and constitutionally protected products. That is a recipe for suppression of both First and Second Amendment rights. It also confirms §3930's vagueness. The state claims the authority to regulate all "marketing activity [that] promotes the dissemination of [firearms]" because that activity may "*result*[] in firearm products *ending up* in the hands of individuals who are not permitted to or should not possess them." Del.Br.12 (emphasis added). This sweeping assertion of authority amounts to a roving commission to suppress any pro-firearms speech. The state's only response to the vagueness charge is to argue that plaintiffs should have to wait to see how the state applies it. *See* Del.Br.12-13. That not only is non-responsive to NSSF's arguments about §3930's layers of uncertainty, *see* NSSF.Br.16-17; Compl. ¶¶32-33, 78-81; it practically confirms them.

2. Just as §3930 is unconstitutionally vague with respect to speech, it is also unconstitutionally vague under the Due Process Clause with respect to all other conduct it polices. NSSF.Br.17-18. Delaware presents no argument that it can meet the more "stringent" test that applies when "constitutionally protected rights" are implicated. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). It therefore (once again) forfeits any response on that front. Instead, Delaware tries to hide behind the statute's use of "reasonable[ness]." Del.Br.15. That retreat is self-defeating, as it leaves the state embracing the very generalized tort

language that it elsewhere protests §3930 is so different from.  In any event, the point of NSSF's vagueness challenge is not that a wholesaler in (e.g.) Arizona, does not know that he has a duty not to sell to a straw purchaser (which, after all, is one of the two enumerated examples in the predicate exception).  The point is that it has no way of knowing what inventory practices vis-à-vis its wholly legal sales to licensed dealers in (e.g.) Missouri a Delaware court would deem sufficiently "reasonable" to avoid liability should a firearm legally sold to a Louisianan, resold to a Tennessean, then stolen and brought to Delaware, be used in a crime.  The answer to that riddle— which the state does not even attempt to provide (and for good reason—how can an industry member "knowingly" violate what is unknown?)—is the crux of the due process problem.

###### D.      Section 3930 Violates the Second Amendment.

Delaware's primary response on the Second Amendment is to argue that §3930 does not implicate the right to keep and bear arms *at all* because it burdens commerce in arms, as opposed to restricting certain types of arms.  Del.Br.13-14.  But even this Circuit's pre-*Bruen* precedent recognized that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment."  *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 226-28 (3d Cir. 2021).  And rightly so, as long-settled Supreme Court precedent holds that a state may not evade a constitutional right by attacking the means by which it is exercised.  "Constitutional rights … implicitly protect those closely related acts necessary to their exercise."  *Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring) (collecting examples).  Just as Delaware cannot evade the Press Clause by targeting the sale of ink and paper, *Minneapolis Star Trib. Co. v. Minn. Comm'r*, 460 U.S. 575, 592-93 (1983), it cannot evade the Second Amendment by targeting manufacturing and selling

arms—"acts necessary to the[] exercise" of the right to keep and bear them. *See Marzzarella*, 614 F.3d at 92 n.8; *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

Section 3930 thus applies to conduct covered by "the Second Amendment's plain text," *N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S.Ct. 2111, 2129-30 (2022), which means Delaware must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *id*. at 2130. Its attempt to do so falls far short, consisting of two sentences in its brief and six paragraphs of a declaration. *See* Del.Br.14; Rivas Decl. ¶¶8-13. Three of those six paragraphs focus on nuisance law in general. Rivas Decl. ¶¶8-10. Far from showing a longstanding tradition that is "relevantly similar" to §3930, *see Bruen*, 142 S.Ct. at 2132, Delaware's reliance on this history of general nuisance liability merely confirms that §3930 is an attempt to revive the exact nuisance suits that Congress and the Third Circuit already rejected as without historical foundation. *See* 15 U.S.C. §7901(a)(7); *Camden Cnty.*, 273 F.3d at 540-41 ("To extend public nuisance law to embrace the manufacture of handguns would be unprecedented under New Jersey state law and unprecedented nationwide for an appellate court."). The declaration then briefly discusses historical "point-of-sale" restrictions, which are not "relevantly similar," insofar as they do not apply tort law or nuisance theories at all. Rivas Decl. ¶¶11-12. But all these comparisons do is illustrate the extent to which §3930 is a historical outlier.

Finally, the state's expert pleads that there needs to be more time for research. Rivas Decl. ¶13. Under *Bruen*, however, a state may pass only those laws that are "consistent with this Nation's historical tradition of firearm regulation." 142 S.Ct. at 2126. That means a state has an obligation to determine whether a law is consistent with historical tradition *before* it enacts it. *See Koons v. Reynolds*, 2023 WL 128882, at *8 (D.N.J. Jan. 9, 2023) ("Surely, Defendants had—or should have had—the historical materials and analyses the State relied upon when it began its legislative

response to *Bruen*."). After all, state legislatures are just as bound as state executive branches and courts to abide by the U.S. Constitution. *See* U.S. Const. art. VI, cl. 3 ("[T]he Members of the several State Legislatures, and all executive and judicial Officers … of the several States, shall be bound by Oath or Affirmation, to support this Constitution[.]"); *Ableman v. Booth*, 62 U.S. 506, 524-25 (1858). If the state needs more time, then it should have taken more time before rushing to enact a novel public nuisance law that is in the teeth of the PLCAA. Its failure to do so confirms that, in addition to being preempted, §3930 is unconstitutional.[6]

\*   \*   \*

As all of the foregoing makes clear, NSSF is (more than) likely to succeed on the merits of its claims. That suffices to defeat the state's motion to dismiss. *See, e.g.*, *Richardson v. Cascade Skating Rink*, 2022 WL 2314836, at \*4 (D.N.J. June 28, 2022) ("[T]he Court has already determined that Plaintiff states a claim … based on the Court's analysis of her likelihood of success on the merits in addressing the motion for a preliminary injunction."). But even if the Court were to conclude, notwithstanding the foregoing, that NSSF is *not* likely to succeed on one or more of its claims, the Court still should deny the state's motion to dismiss. "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299 (3d Cir. 2020) (alteration in original). The hurdle a plaintiff must clear to defeat a motion to dismiss is thus far lower than the hurdle a plaintiff must clear to obtain a preliminary injunction (or even just to show likelihood of

---

[6] Even if further research by the state were appropriate, *but see Koons*, 2023 WL 128882, at \*8, granting a preliminary injunction would still clearly be the correct course. That relief will ensure that constitutional rights remain protected while the state takes the time to do the work its legislature should already have done (which in all events will confirm that the statute cannot stand).

success).  And there can be no reasonable dispute that NSSF's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Delaware does not deny that §3930 regulates truthful, non-misleading marketing of lawful products; regulates the manufacturing, marketing, and selling of firearms in other states whenever it foreseeably leads to effects in Delaware; or imposes severe burdens on commerce in arms.  Nor does Delaware deny that NSSF's members engage in constitutionally protected conduct that §3930 on its face purports to proscribe.  Indeed, Delaware does not even appear to deny that some of §3930's applications would run afoul of the Constitution; it simply argues that now is not the time to decide those issues because it (wrongly) asserts that this challenge must satisfy the *Salerno* standard.

In short, NSSF has more than plausibly pleaded that the "discrete and well-defined" applications of §3930 it challenges in this lawsuit are "likely to occur" and unconstitutional, *Gonzales*, 550 U.S. at 167, particularly given that the state bears the burden of proving their constitutionality, *see Bruen*, 142 S.Ct. at 2135 ("[T]he burden falls on [the state] to show that [its] proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if [the state] carry that burden can [it] show that the pre-existing right codified in the Second Amendment … does not protect petitioners' proposed course of conduct."); *id.* at 2149 n.25 ("[A]gain, the burden rests with the government to establish the relevant tradition of regulation."); *id.* at 2127 ("[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").  The state's half-baked motion to dismiss must therefore be denied.

## II. The Remaining Factors Favor An Injunction.

The significant chilling effect §3930 has on constitutionally protected, truthful speech, plus the loss of immunity from suit, suffice to demonstrate irreparable injury. *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010). But those constitutional injuries do not stand alone. *See* NSSF.Br.19-20.

The state's arguments to the contrary are inconsistent with binding precedent and antithetical to our most fundamental constitutional commitments. Delaware complains that NSSF's members have not attested that they have ceased all advertising or marketing of their products in Delaware. Del.Br.18. That is not how the First Amendment, or the irreparable harm inquiry, works. "Even if the government has not entirely prevented citizens from speaking …, its burdens on speech … [still] may violate the First Amendment." *Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022). The speech-muzzling effect of the threat of §3930 suits thus demonstrates irreparable harm wholly apart from whether the (irreparable) cost of undertaking "compliance measures" would "jeopardize the company's operations and viability." Del.Br.17-18.[7]

Delaware responds that (what it dismisses as) the "mere threat of a potential lawsuit" under §3930, "does not constitute irreparable harm." Del.Br.18. But the state does not deny that NSSF's members remain under a constant threat of being sued under §3930 without prior notice. Moreover, even if the Attorney General disavowed any intention to sue any of NSSF's members for their constitutionally protected conduct (which conspicuously has not happened), §3930 creates a cause of action *for private parties* to sue NSSF's members for "[i]njunctive relief" and "damages." §3930(g). The state likewise does not deny that this ever-present threat forces NSSF's

---

[7] The state is wrong that financial losses rendered "unrecoupable" by the Eleventh Amendment "do[] not constitute irreparable injury." Del.Br.18 (citation omitted). It is black-letter law in this Circuit that "[a] plaintiff can carry its burden by showing that monetary damages are legally unavailable" because, e.g., of the defendant's Eleventh Amendment immunity. *Cigar Ass'n of Am., Inc. v. City of Phila.*, 2021 WL 5505406, at *4 (3d Cir. Nov. 24, 2021); *see also* NJ.PI.Op.17.

members to steer clear of §3930's broad ambit—which *even the state admits* countenances liability for truthful speech about lawful products, *see* Del.Br.12.  Under binding Supreme Court precedent, that alone satisfies NSSF's burden to show irreparable injury:  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020) (per curiam).

The imminent threat of lawsuits poses a double risk of irreparable harm, moreover, given the immunity the PLCAA confers on NSSF's members.  Congress enacted the PLCAA to ensure that industry members would not need to pin their hopes on raising affirmative defenses in state court.  As its plain text makes clear, and countless courts have recognized, the PLCAA guarantees *immunity from suit* entirely.  *In re Academy*, 625 S.W.3d 19, 32-36 (Tex. 2021) (collecting cases).  The state invokes *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020) (cited at 18), but that case is far afield of this one.  The plaintiff there preemptively sued every county in E.D. Pa. "to prevent them from" bringing common-law claims against it.  *Id.* at 267.  Here, NSSF has sued the officer responsible for enforcing the challenged statute.  What is more, there is no PLCAA analog for lead-paint companies, so any injury from a future lawsuit in *Sherwin-Williams* hinged on what each "County might allege" and whether it "will prevail."  *Id.* at 270.  Not so here, as NSSF's members are immune from suit entirely as a matter of federal law—which is why the ability to assert affirmative defenses when someone sues them does not defeat irreparable injury.

NSSF's likelihood of success, *see* pp.1-17, *supra*; NSSF.Br.3-18, and irreparable injury, *see* pp.18-19, *supra*; NSSF.Br.19-20, suffice to justify an injunction.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  In any event, appeals to the generalized interest in enforcing laws, Del.Br.19-20, do not undercut NSSF's public interest arguments, *see* NSSF.Br.20.  And lest there was any doubt on that point, Judge Quraishi's opinion in the New Jersey case would

again light the way. Although "mindful that firearms are inherently dangerous and even more so in the wrong hands," Judge Quraishi was "also mindful that the PLCAA embodies Congress's earnest effort to balance those dangers against the national interest in protecting access to firearms." NJ.PI.Op.19. Judge Quraishi was thus "compelled to find that Defendant fails to show legitimate countervailing concerns" sufficient to defeat NSSF's entitlement to an injunction, notwithstanding the "broad public safety concerns" the state outlined in its briefing and in the findings of the statute. NJ.PI.Op.19. The same is true here, for the same reasons.

## CONCLUSION

For the reasons set forth in NSSF's initial brief and above, this Court should enjoin §3930 and deny Delaware's motion to dismiss.

LEWIS BRISBOIS
BISGAARD & SMITH LLP

/s/ Sean M. Brennecke
Sean M. Brennecke (No. 4686)
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6000
Sean.Brennecke@LewisBrisbois.com

*Attorneys for Plaintiff*

**OF COUNSEL**

PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
Matthew D. Rowen[*]
Nicholas M. Gallagher[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
(*admitted *pro hac vice*)

Dated: February 3, 2023