IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 22-cv-01499-RGA |
| KATHY JENNINGS, Attorney General of the State of Delaware, | ) ) ) | |
| Defendant. | ) ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Nicholas D. Picollelli, Jr. (#6317)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
Nicholas.Picollelli@delaware.gov
*Attorneys for Defendant*

Date: February 17, 2023

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ............................................................................................................................... 1

I.      LEGAL STANDARD – FACIAL CHALLENGES ......................................................... 1

II.     THE COMPLAINT FAILS TO STATE A CLAIM ......................................................... 2

        A.     Count I (Preemption) .......................................................................................... 2

               1.     NSSF misinterprets the meaning of "applicable to" ..................................... 2

               2.     NSSF misinterprets the predicate exception's scienter requirement ............ 5

               3.     NSSF misinterprets the meaning of "proximate cause" ............................... 6

        B.     Count II (Commerce Clause) ............................................................................... 7

        C.     Count III (First Amendment) ............................................................................... 8

        D.     Count IV (Second Amendment) ........................................................................... 9

        E.     Count V (Due Process) ...................................................................................... 10

CONCLUSION ......................................................................................................................... 10

**<u>TABLE OF AUTHORITIES</u>**

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ...............................................................7

*Bank of America Corp. v. City of Miami*, 581 U.S. 189 (2017).....................................6

*Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935)....................................................7

*Byrd v. Shannon*, 715 F.3d 117 (3d Cir. 2013) ............................................................3

*Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3d Cir. 2001)...................................................................................6

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980)................................................................................................9

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022)...........9

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) ......................3

*CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013) .................................10

*CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277 (2011) .............................5

*Drummond v. Robinson Township*, 9 F.4th 217 (3d Cir. 2021)................................9,10

*Empire State Rest. & Tavern Ass'n, Inc. v. New York State*,
    360 F. Supp. 2d 454 (N.D.N.Y. 2005)..................................................................10

*Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169 (10th Cir. 2015)...........................8

*Farina v. Nokia*, 625 F.3d 97 (3d Cir. 2010) ...............................................................7

*Hanover Bank v. C.I.R.*, 369 U.S. 672 (1962) .............................................................3

*Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989)............................................................7

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).........................6

*Ileto v. Glock*, 565 F.3d 1126 (9th Cir. 2009)............................................................3,5

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018)............................7

*Mazo v. N.J. Sec. of State*, 54 F.4th 124 (3d Cir. 2022)...............................................1

*Mugler v. Kansas*, 123 U.S. 623 (1887) .......................................................................7

*Nat'l Shooting Sports Found., Inc. v. James*, 2022 WL 1659192
  (N.D.N.Y. May 25, 2022) ..........................................................................1,3,4,10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)..............................9,10

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)....................................4

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) .......................................7

*Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011). ...............................................2

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) ................8

*Singh-Kaur v. Ashcroft*, 385 F.3d 293 (3d Cir. 2004)...................................................4

*TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230 (3d Cir. 2022) ....................7,8

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ...........................................1

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)............................................9

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914 (3d Cir. 1990).....................8

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
  537 U.S. 371 (2003)....................................................................................5

*Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*,
  346 A.2d 269 (Pa. 1975) ...........................................................................10

## STATUTES AND OTHER AUTHORITIES

U.S. CONST. AMEND. I.............................................................................................8,9

U.S. CONST. AMEND. II ...........................................................................................9,10

U.S. CONST. AMEND. XIV ........................................................................................10

U.S. CONST. ART. VI.................................................................................................7,8

15 U.S.C. §§ 7901-03 ....................................................................................... *passim*

10 *Del. C.* § 3930 ............................................................................................ *passim*

Webster's Third New International Dictionary 105 (2002).............................................2

NSSF's Complaint fails to state a claim because Section 3930 is not preempted and is constitutional.[1]  In defending against Defendant's Motion to Dismiss, NSSF tries to obscure the remedy sought in its Complaint, misstates Defendant's arguments, ignores relevant precedent, misquotes the plain text of Section 3930, misinterprets the PLCAA, and relies on incorrect standards for evaluating Section 3930's constitutionality.  The Court should, accordingly, grant Defendant's Motion to Dismiss—finding that Section 3930 is not preempted, as the Northern District of New York did for a similar New York law,[2] and does not violate the Constitution.

## ARGUMENT

### I.   LEGAL STANDARD – FACIAL CHALLENGES.

"A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case," whereas an as-applied attack "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).  NSSF has leveled a direct challenge to Section 3930 without putting forward specific practices its members fear would violate the statute.  Its requested relief confirms as much—NSSF seeks a declaration that Section 3930 is unconstitutional on its face and is therefore void and completely unenforceable, and a preliminary injunction barring enforcement of the law against NSSF or its 9,000+ unnamed members, a group which likely includes most of the firearms industry.  *See* D.I. 1 p. 3, ¶ 8; *id.* at 31, ¶ 1-2.  In substance, NSSF brings a facial challenge.  *See Mazo v. N.J. Sec. of State*, 54 F.4th 124, 134 n.6 (3d Cir. 2022) (construing suit that "purport[s] to raise both a facial and an as-applied challenge" as raising

---

[1] Capitalized terms shall have the same meaning as in Defendant's Opening Brief.  *See* D.I. 20.
[2] *Nat'l Shooting Sports Found., Inc. v. James*, 2022 WL 1659192, at *4 (N.D.N.Y. May 25, 2022).

1

only a facial attack given similarly unspecific pleadings).  NSSF's claims are thus subject to the demanding standard that governs facial challenges.  A standard which it cannot meet.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM.

### A.    Count I (Preemption).

NSSF's contention that Section 3930 does not fit within the PLCAA's predicate exception, because it is not "applicable to" the sale or marketing of firearms, is not limited to "knowing" violations, and permits civil liability without true "proximate cause," falls flat under scrutiny. Section 3930 fits perfectly within the predicate exception and is, therefore, not preempted.

#### 1.    NSSF misinterprets the meaning of "applicable to."

Contrary to NSSF's primary facial theory, Section 3930 is "a State … statute applicable to the sale or marketing of" firearms within the meaning of the PLCAA's predicate exception. 15 U.S.C. § 7903(5)(A)(iii).  Where a statute "does not define 'applicable,'" courts "look to the ordinary meaning of the term."  *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011). "'Applicable' means 'capable of being applied: having relevance' or 'fit, suitable, or right to be applied: appropriate.'"  *Id.* (quoting Webster's Third New International Dictionary 105 (2002)); *see id.* (holding that "applicable" in bankruptcy statute permitted debtor to claim a particular type of expense if there was sufficient "correspondence to [the] individual debtor's financial circumstances).  Here, Section 3930 corresponds to the sale and marketing activities of firearm industry members by express reference.  It requires firearm industry members to "establish and implement reasonable controls regarding the manufacture, sale, distribution, use, and marketing of" firearm-related products, § 3930(c), and prohibits firearm industry members from "knowingly or recklessly create[ing], maintain[ing], or contribut[ing] to a public nuisance through the sale, manufacturing, importing, or marketing of a firearm-related product" through unlawful or

unreasonable conduct.   § 3930(b).   So, it applies to (fits, has relevance to, is suitable and appropriate to) sales and marketing of firearms by industry members.

Even the cases on which NSSF relies, *see* D.I. 28 p. 4-5, confirm the match between the PLCAA's predicate exception and Section 3930.   *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008) (holding state statutes that "expressly regulate firearms" fit the exception); *Ileto v. Glock*, 565 F.3d 1126, 1136 (9th Cir. 2009) (exception covers "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry").   Indeed, in rejecting NSSF's challenge to a similar New York law, the Northern District of New York held that "[n]o reasonable interpretation of 'applicable to' can exclude a statute which imposes liability exclusively on gun manufacturers for the manner in which guns are manufactured, marketed, and sold."   *James*, 2022 WL 1659192, at *4.   Plain meaning and precedent foreclose NSSF's atextual theory.

NSSF claims that a law is only "applicable to" the sale or marketing of a firearm product if that law imposes a *sufficiently concrete* duty.   D.I. 28 at 5.   That runs into several defects.   Most obviously, a limiting principle of "sufficiently concrete" is nowhere in the text of the PLCAA.   *See Hanover Bank v. C.I.R.*, 369 U.S. 672, 687 (1962) (courts reject efforts to "add to or alter the words employed to effect a purpose which does not appear on the face of the statute").   Nor is it a plausible reading of "applicable," and NSSF offers no dictionary definition to prove that "applicable" means concrete.   *See Byrd v. Shannon*, 715 F.3d 117, 122-23 (3d Cir. 2013) ("If the language of the statute has a reasonably plain meaning, then our sole function is to enforce the statute's language.").

NSSF pushes two arguments that "applicable to" really means "sufficiently concrete." Neither succeed.   NSSF first points to the PLCAA's purpose to bar lawsuits against the gun industry "for the harm solely caused by the criminal or unlawful misuse of firearm products or

3

ammunition products by others ….." D.I. 28 at 4 (quoting 15 U.S.C. § 7901(b)(1)). Yet, vague assertions about the problem that animated a statute cannot overcome the plain text, for "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). Nor is NSSF even correct in its characterization of the PLCAA's purpose. Congress made clear its concern was about "imposing liability on an entire industry for harm that is *solely* caused by others." § 7901(a)(6) (emphasis added); *see also* § 7901(b)(1). That is not what Section 3930 does. Instead, it focuses on industry members' *own misconduct* that contributes to a public nuisance. *See James*, 2022 WL 1659192, at *4 (rejecting identical claim that New York law "is not the type of law that Congress intended to authorize," calling NSSF's theory "untethered from the text of the predicate exception itself").

NSSF's other argument, based on the PLCAA's two example predicate statutes, is equally untenable. D.I. 28 at 6. NSSF correctly notes that the PLCAA allows suits to proceed when based on violations of "a State … statute applicable to the sale or marketing of the product, … *including*" suits involving record-keeping failures or falsifications, and aiding or abetting a straw purchase. § 7903(5)(A)(iii)(I)-(II) (emphasis added). NSSF's two inferential leaps—that the predicate exception is limited to whatever these examples have in common, and what they have in common is concreteness—are, however, baseless. For one, there is no reason to think that Congress's decision to offer examples that fit within the predicate exception was meant to limit its reach. Instead, use of the term "including" suggests "that Congress intended to illustrate a broad concept rather than narrowly circumscribe a term with exclusive categories." *E.g.*, *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 298 (3d Cir. 2004). And that structure, a broad term ("applicable to") that "includes" two distinct examples, distinguishes the PLCAA from cases analyzing different types of text.

4

*Compare Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003) (when "general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to … the preceding specific words"), *with CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 295 (2011) (that cannon of interpretation is inapplicable where a law provides two "distinct and independent" prohibitions).

Even if the illustrative examples could change the meaning of "applicable to," the operative rule would not be NSSF's "concrete[ness]" test.  After all, both examples involve *legislative* enactments, rather than common law suits—the latter being a core concern behind the PLCAA. *See* § 7901(a)(7).  Both apply specifically to the firearms industry, rather than industries generally. *See Ileto*, 565 F.3d at 1136.  Both also involve wrongdoing by an industry member, rather than hinging solely on third parties.  *See* § 7901(a)(6), (b)(1).  Whereas the only "commonality" that NSSF identifies, concreteness, makes little sense as one of the examples permits liability if the seller has "reasonable cause to believe" the actual buyer was not allowed to have the weapon, § 7903(5)(A)(iii)(II), which is hardly the sort of specific duty NSSF is demanding.  So, even using NSSF's methodology, Section 3930 is an "applicable" state law under the predicate exception.

### 2.    NSSF misinterprets the predicate exception's scienter requirement.

Despite acknowledging that the PLCAA specifically contemplates predicate statutes with a "knowing" or "reasonable cause to believe" scienter requirement, NSSF contends that Section 3930 cannot serve as a predicate statute because it allows for liability based on "recklessness."  *See* D.I. 28 at 6.  NSSF thinks that "reasonable cause to believe" equates to "constructive knowledge," not "recklessness."  *Id.*  And since "constructive knowledge" is closer to "knowingly" than "recklessness," the example predicate statute apparently affirms that all predicate statutes must include a "knowing" scienter requirement.  *Id.*  Not so.  That the PLCAA provides an example

5

predicate statute (in a list of non-exhaustive examples), requiring a lesser state of mind than "knowingly," should signal that a predicate statute, such as Section 3930, can include a scienter requirement other than "knowingly."  Stated differently, if the PLCAA only allows "knowing" violations, then presumably the example predicate statutes would not include lesser scienter requirements.  Since one example does, a predicate statute with a lesser scienter requirement than knowingly, such as Section 3930, should be acceptable under the PLCAA.

### 3.  NSSF misinterprets the meaning of "proximate cause."

Lastly, NSSF contends that "§ 3930 does not require anything close to proximate cause, as it permits the imposition of liability for far-flung harms brought about by the criminal misconduct of independent third parties."  D.I. 28 at 7.  Defendant cited cases in her Opening Brief that rebut NSSF's contention, which NSSF ignores.  Moreover, the cases relied on by NSSF do not lend any compelling support to its contention.  First, in *Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*, the Third Circuit's holding relies on New Jersey law rather than Delaware or federal common law principles of proximate cause.  *See* 273 F.3d 536, 541 (3d Cir. 2001).  Second, *Bank of America Corp. v. City of Miami* does not provide that "'foreseeability alone' is generally '*not* sufficient to establish proximate cause.'"  D.I. 28 at 7 (emphasis in original).  Rather, it narrowly provides that "foreseeability alone is not sufficient to establish proximate cause under the [*Fair Housing Act*.]"  581 U.S. 189, 201 (2017) (emphasis added).  And the Supreme Court in that case declined to "draw the precise boundaries of proximate cause under the FHA[,]" leaving it to the lower courts to consider the "nature of the statutory cause of action" and "what is administratively possible and convenient" in deciding the contours of proximate cause under the FHA.  *See id.* at 203.  Third, the Supreme Court's discussion of proximate cause in *Holmes v. Securities Investor Protection Corp.* is, similarly, limited to the RICO Act.  *See* 503 U.S. 258, 268-

6

76 (1992).  Neither Supreme Court case discusses how the foreseeable intervening criminal act of a third party might break the chain of proximate cause under the PLCAA.  Therefore, NSSF has failed to establish that Section 3930's formulation of proximate cause falls outside the PLCAA.

*       *       *

One final point remains.  As explained, a plain reading of the predicate exception's text saves Section 3930 from preemption, and none of NSSF's atextual arguments prevail.  If this Court believes the questions are close or that the text is ambiguous, however, it must still reject NSSF's theory because federal courts "apply a presumption against preemption" when reviewing federal statutes that pertain to "'areas of traditional state regulation' or police power," *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 & n. 5 (3d Cir. 2018), such as public nuisance regulation. *See e.g., Mugler v. Kansas*, 123 U.S. 623, 669 (1887).  That presumption applies even if federal law includes an express preemption provision.  *Lupian*, 905 F.3d at 131 & n.5.  And the presumption requires the party claiming preemption to show that its construction is the *only* plausible reading of the federal law.  *See Farina v. Nokia*, 625 F.3d 97, 118 (3d Cir. 2010) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)).  NSSF has failed to do so in this case.

### B.    Count II (Commerce Clause).

NSSF misunderstands the Commerce Clause, not the Defendant.  The "extraterritoriality" rule in *Baldwin* and *Healy* is inapplicable to statutes, like Section 3930, that do not tie prices of in-state products to out-of-state prices.  *See Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003) (citing *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935); *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989)).  The Third Circuit has also rejected the claim that "[w]here the extraterritoriality doctrine has been invoked," as here, "discrimination does not matter and is not an element of the claim."  *TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230, 238 n. 7 (3d Cir. 2022).  In

7

balancing harms to interstate commerce against local benefits under *Pike*, "[t]he only burdens to be considered in the balancing test are those that 'discriminate against interstate commerce.'" *Id.* at 240.  As a result, "once it is clear that the laws do not discriminate between in-staters and out-of-staters, 'the inquiry as to the burden on interstate commerce should end' and further analysis of the local benefits is unnecessary." *Id.* at 241.  If it were otherwise, courts would have to "strike down state health and safety regulations" of all sorts. *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1175 (10th Cir. 2015).  NSSF does not dispute that Section 3930 applies equally to interstate and intrastate commerce.  NSSF has, therefore, failed to rebut Defendant's contention that Section 3930 does not violate the Commerce Clause.

### C.   <u>Count III (First Amendment).</u>

NSSF's First Amendment challenge fails because Section 3930's marketing provisions are a commercial-speech regulation that satisfies intermediate scrutiny.  To start, contrary to NSSF's contention, Section 3930 does not apply "*only* to materials promoting firearms." D.I. 28 at 11.  "Promote" only appears in Section 3930(a)(6)c., which states in part: "*promote the unlawful …marketing … of a firearm-related product.*"  *Id.* (emphasis added).  And NSSF does not dispute that unlawful promotion of a firearm-related product is unprotected by the First Amendment.  Nor does NSSF point to anything else in Section 3930 that targets "particular views taken by speakers" or that is based on "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

The "marketing" being regulated, meanwhile, is commercial since it (1) advertises (2) a specific product (firearms-related products) and (3) NSSF's members have an economic motivation for marketing.  *See U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990).  A viewpoint-neutral regulation of commercial speech, like Section 3930,

is subject to intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), whether it is content based or not.  *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1474 (2022).  NSSF relies on the same incorrect reading of Section 3930, discussed *supra*, in attempting to apply *Central Hudson's* factors.  D.I. 28 at 12-13.  Thus, NSSF has not established that Section 3930 contains any speech restrictions that violate the First Amendment.

NSSF also relies on the same incorrect reading of Section 3930 for its contention that the statute is unconstitutionally vague under the First Amendment.  D.I. 28 at 13.  NSSF further misreads Defendant's vagueness argument.  NSSF contends that "[t]he state's only response to the vagueness charge is to argue that plaintiffs should have to wait to see how the state applies it."  D.I. 28 at 13.  In truth, Defendant contends that NSSF's vagueness challenge is purely speculative because it failed to assert "allegations that any of its more than 9,000 members have pulled back marketing in response to [Section 3930] or are even contemplating doing so."  D.I. 20 p. 13.  In other words, if Section 3930 was so vague on its face as to have a chilling effect on NSSF's members, NSSF needed to allege that they have taken some action in response to the threat of the statute's enforcement.  Since NSSF has not, its argument is purely speculative and insufficient to support a facial attack on the statute.

### D.    Count IV (Second Amendment).

NSSF contends that a pre-*Bruen* Third Circuit decision recognized that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment."  D.I. 28 at 14 (quoting *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010)).  Yet, that is inconsistent with a subsequent Third Circuit decision, *Drummond v. Robinson Township*, which provides that "[w]e know of no court, modern or otherwise, to hold that the Second Amendment

9

secures a standalone right to *sell* guns[.]"  9 F.4th 217, 230 (3d Cir. 2021).  NSSF fails to reconcile this holding with any of the precedent that it cites.  Nor does NSSF allege that Section 3930 impairs the public's ability to possess firearms.  Because NSSF claims a burden on conduct indisputably outside the Second Amendment's scope, the analysis stops here.  *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

      **E.**    **Count V (Due Process).**

Finally, there is no merit to NSSF's contention that Section 3930 is so vague that a wholesaler is incapable of determining what inventory practices a Delaware court would deem sufficiently "reasonable" prior to a hypothetical chain of firearm(s) sales across multiple states followed by use of the firearm(s) in Delaware to commit a crime.  D.I. 28 at 14.  Laws frequently require "reasonableness," *e.g.*, *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 292 (Pa. 1975) (noting that "'reasonableness' pervades the common law" and collecting state laws), and thus "statutes that employ the term 'unreasonable' have survived constitutional challenges based upon vagueness time and time again, as 'unreasonable' is a 'widely used and well understood word.'" *Empire State Rest. & Tavern Ass'n, Inc. v. New York State*, 360 F. Supp. 2d 454, 463 (N.D.N.Y. 2005) (collecting examples); *see also James*, 2022 WL 1659192, at *11 (rejecting vagueness challenge to New York's public nuisance law because "[c]ourts regularly provide meaning to the term unreasonable" and "whether an action contributed to a result is neither a vague nor esoteric inquiry").  Section 3930, then, is hardly "so vague as to be 'no rule or standard at all.'"  *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 632 (3d Cir. 2013) (citation omitted).

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court dismiss NSSF's Complaint with prejudice.

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

*/s/ Nicholas D. Picollelli, Jr.*
Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Nicholas D. Picollelli, Jr. (#6317)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
Nicholas.Picollelli@delaware.gov
*Attorneys for Defendant*

Date: February 17, 2023

11