LEWIS
BRISBOIS
LEWIS BRISBOIS BISGAARD & SMITH LLP

Sean M. Brennecke
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Sean.Brennecke@lewisbrisbois.com
Direct: 302.985.6009

August 25, 2023

**VIA CM/ECF**

The Honorable Richard G. Andrews
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801-355

Re: *National Shooting Sports Foundation v. Jennings, C.A. No. 1:22-01499-RGA*

Dear Judge Andrews:

Plaintiff National Shooting Sports Foundation ("NSSF") submits the following response to the Court's order of August 18, 2023. Dkt.37. The Third Circuit's decision in *National Shooting Sports Foundation v. Attorney General of New Jersey*, No. 23-1214, confirms that NSSF has standing to challenge Delaware's new public nuisance statute, Senate Bill 302 ("SB 302"), regardless of whether it had standing in the *New Jersey* case.

First, the Third Circuit's decision underscored that "what the enforcer has said about enforcement plans" is critical to whether a plaintiff (or its members) faces imminent injury from enforcement of a statute. Op.11. And on that score, this case could not be more different from the *New Jersey* case. At oral argument before the Third Circuit, counsel for "the Attorney General [of New Jersey]" specifically "disavowed" any intention of enforcing the challenged statute, Assembly Bill 1765 ("A1765"), against "[NSSF] or its members just for participating in 'lawful commerce.'" Op.11. In other words, the state in the *New Jersey* case said on the record that it has no plans to bring an enforcement action against an NSSF member unless the state has reason to believe that the member's "sale, manufacturing, … or marketing of a gun-related product" violated some *other* statute, such that the conduct would be "unlawful in itself." *See* N.J. Stat. Ann. §2C:58-35(a)(1). That on-the-record disavowal of any intention to enforce A1765 against NSSF or its members for lawful conduct, even if the state views that conduct as "unreasonable under all the circumstances," *id.*, materially altered the Article III analysis. *See* Op.10-14.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA
128578143.2

But there is no such thing here. In fact, the State's on-the-record position about enforcement *in this case* is 180 degrees away from the state's on-the-record position about enforcement in the *New Jersey* case. When pressed by the Court in the *New Jersey* case, the state expressly disavowed any intention of bringing enforcement actions against NSSF members for conduct that was not unlawful in itself. But, here, the State did exactly the opposite—and did so multiple times.

At oral argument on Plaintiff's motion for a preliminary injunction, Your Honor asked the State for "a realistic hypothetical as to something where SB 302 would apply to a manufacturer." Dkt.34 at 63:1-5. In stark contrast to the *New Jersey* case, where the state pointed to its desire to enforce its statute against *unlicensed* industry participants and those who violate other concrete prohibitions on firearm-related commerce, here the State claimed that it could sue one of NSSF's members under SB 302 for "manufacturing more guns than" the State believed the legal market could reasonably bear. *Id.* at 63:22–64:19; *see also id.* at 64:20-22 (the Court noting that "the secondary market that doesn't follow the same practices and procedures, that's a legal market"). Those general-tort-theory allegations, untethered from any *unlawful conduct*, are literally the same allegations that the Ninth Circuit found preempted in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). Indeed, the State here *explicitly invoked* the allegations in "the Ninth Circuit's *Glock* case" (Dkt.34 at 63:23) not once, but twice, as an example of the type of allegations that it intends to assert to try to hold NSSF's members liable under SB 302. *See* Dkt.34 at 75:4-17. The Court asked the State "how would a manufacturer know" that its lawful manufacturing, selling, or marketing was nonetheless unreasonable or lacked reasonable controls. *Id.* at 75:4-6. The State responded by pointing once again to the allegations in "the Ninth Circuit's *Glock* decision," where the claim was that manufacturers ("higher-up levels in the chain") "had actual knowledge of certain secondary markets that were being created where illegal guns were being sold," such that they could be held liable for nuisance and negligence just for manufacturing their products, even though none of their conduct (or products) was illegal. *Id.* at 75:5-17.

And the State went even further. On top of evincing a clear intention to bring *Ileto v. Glock* redux suits against NSSF members under SB 302, the State here explained that manufacturers could "potential[ly]" face an enforcement action under SB 302 for failing to implement "reasonable measures" on their marketing if Google's algorithms (which are based on individual users' search histories) caused advertisements for manufacturers' firearm-related products to show up as banner ads on a "type of website" where the State believes they should not appear, such as "suicide prevention blog," and the manufacturers do not come up with a way to stop Google's algorithms. *See id.* at 63:6-15, 75:18–78:14.

Moreover, despite this Court's repeated efforts to solicit an assurance from Attorney General Jennings that her Office would not pursue such a suit against NSSF or its members at least during the short pendency of the *New Jersey* appeal, the Attorney General declined to provide even that. Rather, Attorney General Jennings did exactly the opposite. *See* Dkt.36 at 1 ("To ensure that manufacturers, distributors, sellers, importers, and marketers implement reasonable controls to prevent criminal and self-imposed gun violence, <u>Defendant Jennings does not agree to a stay of enforcement of Section</u>

3930.”). And, true to her word, Attorney General Jennings *has already* invoked SB 302 as a basis for an investigative subpoena *against one of NSSF's members*. *See* Motion to Remand ¶¶18-19, 29, *Delaware v. Cabela's Inc.*, No. 1:23-cv-00790-RGA (D. Del. Aug. 18, 2023), Dkt.6.

To be sure, an investigative subpoena is not an enforcement action. But as the Third Circuit's opinion in the *New Jersey* case makes clear, the Article III question at bottom is whether NSSF members face a "'credible' and 'substantial'" "threat of enforcement." Op.10 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014)). And here, NSSF members have every reason to believe that the State intends to enforce SB 302 against them in the ways it outlined at oral argument. After all, here is how the State explained at oral argument the process that would lead up to an enforcement action:

> [O]ur office would have to issue a subpoena to, I don't know, say, Cabela's or something. Maybe there was suspicion of some practices that they weren't doing properly. So, the most direct way would probably be a subpoena as part of an investigation.

Dkt.34 at 80:3-7. So, according to the State here, "the most direct way" a firearm industry member ("say, Cabela's") would know that the State was gearing up to bring an enforcement action against it under SB 302 would be if the Attorney General issued the member an investigative subpoena. *And that is precisely what the Attorney General has now proceeded to do*. In short, the clock is not just ticking, but mere minutes to midnight. This case thus stands in stark contrast to the *New Jersey* case, where the challenged statute "has not been enforced against anyone, let alone [NSSF] or its members." Op.10.

Finally, unlike under A1765 in the *New Jersey* case, private-party suits *can* be brought under SB 302. *See* 10 Del. Code §3930(g); *see also* Op.10 ("[T]he risk of enforcement is greater when private parties can enforce the law.").

In sum, this case falls far on the other side of the line drawn by the Third Circuit. By failing to give the same assurances New Jersey gave, and to the contrary repeatedly emphasizing that the State fully intends to use SB 302 to revive exactly the type of suits against NSSF's members that the PLCAA was intended to (and does) foreclose, Delaware has ensured that the logic of the Third Circuit's opinion cuts against it and in favor of standing in this case. Delaware itself has removed the "uncertainty" that the Third Circuit found dispositive in the *New Jersey* case and replaced it with "evidence of the threat" of enforcement. *See* Op.14-15. NSSF therefore has standing to bring this suit.

The Honorable Richard G. Andrews
August 25, 2023
Page 4

Respectfully,

*/s/ Sean M. Brennecke*
Sean M. Brennecke (DE Bar No. 4686)

cc: All counsel of record (via CM/ECF)

LEWIS BRISBOIS BISGAARD & SMITH LLP
www.lewisbrisbois.com

128578143.2