

**KATHLEEN JENNINGS**
ATTORNEY GENERAL

**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX: (302) 577-6630
CRIMINAL DIVISION (302) 577-8500
FAX: (302) 577-2496
FRAUD DIVISION (302) 577-8600
FAX: (302) 577-6499

September 1, 2023

**Via CM/ECF**
The Honorable Richard G. Andrews
United States District Court, District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Unit 9, Room 6325
Wilmington, DE 19801-3555

      RE: *National Shooting Sports Foundation v. Jennings*, C.A. No. 22-1499-RGA

Dear Judge Andrews,

      I write in response to Plaintiff NSSF's letter of August 25, 2023. D.I. 38 (the "Letter"). In the Letter, NSSF argues this case is not subject to dismissal under the Third Circuit Court of Appeals' August 17, 2023, precedential opinion in *National Shooting Sports Foundation v. Platkin*, No. 23-1214 (the "Opinion"). NSSF distorts both the record and the Opinion. As set forth below, the reasoning in the Opinion is fully applicable to this case and requires this case to be dismissed.

      **A.  Background**

      In the Opinion, the Third Circuit found NSSF lacked Article III standing to pursue its pre-enforcement challenge of New Jersey's public nuisance statute, N.J. Stat. §§ 2C:58-33(a) *et seq.* Like Section 3930, New Jersey's statute enables the state Attorney General to sue firearms industry members whose "unlawful" or "unreasonable" conduct "contributes to a public nuisance through the sale, manufacturing, distribution, importing, or marketing of a gun-related product." Op. at 4-5; *compare with* 10 *Del. C.* § 3930(b)-(e). The Third Circuit found NSSF failed to make the requisite showing "that it or its members (1) intend to take action that is (2) 'arguably affected with a constitutional interest' but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against them is substantial." Op. at 7 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). The Third Circuit further observed that on a motion for preliminary injunction, the plaintiff "must produce evidence showing 'more than a mere possibility' that their rights are threatened." *Id.* (quoting *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153-53 (3d Cir. 1999)). Concluding NSSF had not met any element of standing, the Third Circuit vacated the District Court of New Jersey's grant of a preliminary injunction and remanded with instructions to dismiss for lack of jurisdiction. Op. at 16.

The Honorable Richard G. Andrews
Page 2

### B. NSSF Has Not Demonstrated a Substantial Threat of Enforcement

In the Letter, NSSF addresses only the fourth prong of the *Driehaus* test—the substantial threat of enforcement—and offers two arguments for why the Opinion is inapplicable. First, NSSF claims that unlike the New Jersey Attorney General, Defendant here has not "disavowed" any intent to enforce the challenged statute. Ltr. at 1. Second, NSSF contends that because private parties may sue under Delaware's statute unlike under New Jersey's statute, the threat of enforcement is substantial. Ltr. at 3. Neither argument has merit.

#### 1. The New Jersey Attorney General Did Not Disclaim Intention to Enforce the New Jersey Statute.

As part of its analysis of whether NSSF or its members face a substantial threat of enforcement, the Third Circuit considered "what the enforcer has said about enforcement plans," noting, however, that such statements "are hardly dispositive." Op. at 11.[1] Citing to the oral argument, the Third Circuit observed the New Jersey Attorney General "disavowed prosecuting the Foundation or its members just for participating in 'lawful commerce,' which is all the Foundation has said it wants to do." *Id.* In the specific exchange the Opinion cited, the Third Circuit queried whether "lawful commerce" activity, such as selling guns, would violate the statute, and the New Jersey Attorney General confirmed that lawful commerce by itself is not a violation. Oral Arg. 5:23-35.[2] The Third Circuit observed in the Opinion that NSSF failed to identify what lawful activities it or its members seek to engage in that would subject them to suit under New Jersey's statute. Op. at 11-12 ("[T]he Foundation never explains how simply making, marketing, or selling guns will inevitably trigger this Law.").

NSSF contorts the Third Circuit's analysis and the proceedings to proclaim New Jersey "said on the record that it has no plans to bring an enforcement action against an NSSF member unless the state has reason to believe that the member's 'sale, manufacturing or marketing of a gun-related product' violated some *other* statute, such that the conduct would be 'unlawful in itself.'" Ltr. at 1 (quoting N.J. Stat. Ann. § 2C:58-35(a)(1)).

But the New Jersey Attorney General said no such thing. From the start to end of oral argument, counsel for the New Jersey Attorney General consistently defended the validity of enforcement against conduct that could be deemed unreasonable under the New Jersey statute even if the conduct were otherwise lawful. Oral Arg. at 5:32; 69:45-71:40. The New Jersey Attorney General's position never changed through briefing and oral argument.[3]

---

[1] Contrary to NSSF's characterization, the Third Circuit did not find the enforcer's statements to be "critical" to its analysis. Ltr. at 1.
[2] The audio file of the Third Circuit oral argument is available at https://www2.ca3.uscourts.gov/oralargument/audio/23-1214_NatlShootingSportsFndtnv.AttyGenNJ.mp3.
[3] *See Platkin*, Doc. 19 at 41-44; Doc. 58 at 12-14. In fact, the New Jersey Attorney General squarely addressed NSSF's misguided argument in the briefing, pointing out "tortious conduct is susceptible to liability regardless of whether it violates a *separate* statute." Doc. 58 at 14 n.3.

The Honorable Richard G. Andrews
Page 3

And NSSF's own statements at the oral argument confirm NSSF clearly understood that the New Jersey Attorney General had *never* made any such disclaimer. Throughout the hearing, NSSF contended that New Jersey's statute subjects members to liability for "insufficiently reasonable" conduct (Oral Arg. at 27:39); New Jersey "plans" to file lawsuits in violation of PLCAA (Oral Arg. at 34:45); New Jersey has made "abundantly clear" it intends to enforce the statute (Oral Arg. at 37:31); New Jersey failed to identify what it deemed "reasonable controls" (Oral Arg. at 46:22); New Jersey put NSSF members in the "terrible position" of facing liability for conduct deemed to be unreasonable (Oral Arg. at 47:56-48:45); New Jersey "never suggested" it would decline to bring lawsuits that fall outside PLCAA's predicate exception (Oral Arg. at 60:05). Indeed, NSSF expressed to the Third Circuit its "concern" that New Jersey had ***not*** disavowed enforcement of the statute with respect to activities that were "unreasonable" but not "unlawful in and of themselves." Oral Arg. at 40:56-43:28.

In its search for a meaningful distinction between this case and *Platkin*, NSSF simply invents a litigation position for the New Jersey Attorney General—one that NSSF knows the New Jersey Attorney General did not take.

### 2. NSSF Mischaracterizes the Record in this Case.

NSSF attempts to draw a contrast between the positions taken by the New Jersey and Delaware Attorneys General to argue that NSSF and its members face a substantial threat of enforcement under Section 3930. Ltr. at 2. Setting aside NSSF's blatant mischaracterization of New Jersey's litigation position, discussed above, NSSF misstates Delaware's positions in this case as well. As in New Jersey, Delaware's statute encompasses only misconduct by firearm industry members (*see* Op. at 11), whether that conduct is unlawful in itself or is unreasonable. Neither New Jersey nor Delaware has stated otherwise.

During oral argument in this case, the Court observed that firearm manufacturers and sellers could be positioned differently and sought clarification on what injunctive relief would look like if PLCAA preempted Section 3930 as to some industry members but not others. Tr. at 26:25-27:3.[4] Accordingly, the Court asked both NSSF and Defendant for hypothetical scenarios where the statute could apply to firearm manufacturers, as opposed to sellers. Tr. at 12:19-24; 63:1-5. NSSF insisted that all industry members are equally situated (Tr. at 27:4-5) while Defendant acknowledged that realistically Section 3930 might be less likely to apply to manufacturers' conduct (Tr. at 75:21-76:8).

In addressing the Court's question, Defendant posed a hypothetical scenario where a manufacturer targeted advertisements on a suicide prevention blog regarding a firearm's strength and caliber, "acknowledg[ing] that's a completely out-of-left-field example." Tr. 63:7-15. The Court responded that "it's hard to, honestly, think that a manufacturer would do that on purpose." Tr. 63:16-17. Pressed by the Court, Defendant posed a different scenario where a manufacturer knowingly makes thousands of guns for distribution to Delaware's police departments despite knowing there were only one hundred officers in the entire state. Tr. at 63:22-64:6. Despite NSSF's hyperbole, at no point did Defendant express any "clear intention" (Ltr. at 2) to bring such

---

[4] The transcript of the February 28, 2023, hearing is attached as Exhibit A.

The Honorable Richard G. Andrews
Page 4

lawsuits.[5]  Consistent with the Third Circuit's concerns in *Platkin*, dealing in hypotheticals is a far cry from showing that a plaintiff faces any substantial threat of enforcement.  Oral Arg. at 33:32-34:23 ("I don't know what 'these lawsuits' are until I see them.").

Furthermore, contrary to NSSF's characterization, this Court did not make "repeated efforts to solicit an assurance from Attorney General Jennings that her Office would not pursue such a suit against NSSF or its members at least during the short pendency of the *New Jersey* appeal."  Ltr. at 2.  In the context of NSSF's request for a preliminary injunction and the Court's concerns about the proper scope of an injunction, the Court queried whether it would be "prudent" to wait for the outcome of the then-pending appeal in *Platkin*.  Tr. at 29:13-16.  NSSF raised the possibility of staying enforcement of Section 3930 pending the appeal to avoid the need to come back to the Court for emergency relief if Delaware filed suit, but acknowledged it was "doubtful" Defendant would agree to a stay.  Tr. at 29:17-30:9.  Noting that it seemed unlikely Delaware would be enforcing Section 3930 "in the near future," the Court asked for the state's position on whether it could agree to stay enforcement pending the outcome of *Platkin* in the interest of judicial economy.  Tr. at 30:10-31:13.  The Court's query could not be reasonably interpreted to be a solicitation of an assurance that Defendant would refrain from filing lawsuits under the hypothetical scenarios discussed during the hearing.

### 3. The Cabela's Subpoena Does Not Constitute a Substantial Threat of Enforcement.

NSSF points to a subpoena issued by the Delaware Department of Justice to Cabela's as indicative of a substantial threat of enforcement, again mischaracterizing the record.  Ltr. at 3.  The Delaware Department of Justice issued its initial investigatory subpoena to Cabela's on February 15, 2023, nearly two weeks before the hearing in this case.[6]  During the hearing, the Court acknowledged that no lawsuits under Section 3930 existed and observed that any such lawsuit would take time to develop.  Tr. at 79:15-80:1.  Defendant confirmed the Court's understanding and reasoned that any lawsuit would be preceded by an investigation that would likely include a subpoena for information.  Tr. at 80:2-7.  Notably, NSSF did not express any concern during the hearing about a looming threat of enforcement.  And Cabela's, represented by counsel at the same law firm as NSSF's counsel, even lodged objections to Delaware's subpoena based on the pendency of this action and the District Court of New Jersey's decision in *Platkin*.[7]  NSSF's alarmist rhetoric now is, at minimum, disingenuous.

Moreover, NSSF acknowledges, as it must, that "an investigative subpoena is not an enforcement action."  Ltr. at 3.  An investigation is just that: an investigation.  Based on what an

---

[5] NSSF's invocation of *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), undermines its position.  If NSSF is correct that, as in *Glock*, such a lawsuit is barred by PLCAA, then it can raise an affirmative defense or seek dismissal; there is no standing to bring this action.  Op. at 8 ("Even if federal law gives gun sellers a statutory immunity that New Jersey would violate just by filing a complaint, a statutory violation is not enough to show standing." (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2025 (2021))).

[6] *Delaware v. Cabela's Inc.*, Civ. No. 23-790 ("*Cabela's*") D.I. 1-1 at 91.

[7] *Cabela's*, D.I. 1-1 at 3-53.

The Honorable Richard G. Andrews
Page 5

investigation finds, there might never be any enforcement action.[8]  As the Third Circuit stated, "any 'eventual action will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction.'"  Op. at 11 (quoting *Trump v. New York*, 141 S. Ct. 530, 536 (2020)).  A subpoena could at some point in time lead to a lawsuit, or it might not.  Op. at 14 ("So we are left with the same uncertainty we had in *Sherwin-Williams*—the Attorney General 'might sue' the Foundation or its members, 'but it might not.'" (quoting *Sherwin-Williams Co. v. Cty. of Delaware*, 968 F.3d 264, 272 (3d Cir. 2020))).

### 4. Section 3930's Private Suit Provision Does Not Alter the Analysis.

NSSF is correct in its observation that unlike New Jersey's statute, Section 3930 allows persons other than the Attorney General to bring suit.  10 *Del. C.* § 3930(g)(1).[9]  But the standing analysis does not change.  In the Opinion, the Third Circuit found the fact only New Jersey's Attorney General could sue under the statute weighed against an enforcement threat, noting "the risk of enforcement is greater when private parties can enforce the law."  Op. at 10 (citing *Driehaus*, 573 U.S. at 164).  However, that sliding scale of enforcement threat was not dispositive to the Third Circuit's analysis.  And NSSF has not pointed to any lawsuit filed or threatened by a private party.

\*     \*     \*

Just as in *Platkin*, NSSF has no Article III standing to pursue its pre-enforcement challenge of Senate Bill 302.  NSSF's attempts to distinguish this case from *Platkin* fall short and the Court should dismiss this case for lack of jurisdiction.

I am available at the Court's convenience to address any questions or concerns.

Sincerely,

*/s/ Zi-Xiang Shen*
Zi-Xiang Shen (#6072)
Deputy Attorney General

cc: Counsel of record (via CM/ECF)

---

[8] Of note, Delaware issued a revised and superseding subpoena on March 3, 2023, that specified the investigation sought information regarding possible violations of not only Section 3930, but five other sections of the Delaware Code.  *Cabela's*, D.I. 1-1 at 105.

[9] A person suing under Section 3930 must also notify the Delaware Attorney General within 5 days of filing suit.  10 *Del. C.* § 3930(g)(2).